## STATE v. TARLTON.

Where, on a trial for malicious mischief, no foundation had been laid for impeaching him, evidence that prosecutor had received money for whisky, which accused and others drank just before the commission of the offense, was inadmissible to impeach his credibility.

The malicious intent essential to constitute the offense of malicious mischief may be inferred from the nature of the act and the circumstances of the case.

To constitute an offense under Rev. Pen. Code, § 712, punishing the "malicious injury or destruction of property," the act must not only be done willfully, but for the purpose of avenging some wrong sustained by the person charged with the offense.

On a trial for malicious mischief in violation of Rev. Pen. Code, § 712, an instruction that such acts in relation to the property of another as evince a disposition of wanton deviltry and reckless disregard of the rights and property of another are, in law, malice, together with the charge that to justify a conviction the jury must find not only that accused willfully and intentionally, but that he wantonly and in a spirit of revenge, injured the property of another, sufficiently describes "malice," as defined by section 811 as importing a wish to annoy or injure another.

An instruction, on a trial for malicious mischief, that the good order and welfare of the community was at stake, and that, no matter whether a man destroyed much or little property, if he did it in a spirit of wantonness, he should be punished, was not objectionable as coercing the jury to find accused guilty.

Where the amount of the fine imposed is within the discretion of the trial court, the court on appeal will not review it unless the discretion has been clearly abused:

Under Rev. Pen. Code, § 14, providing that a misdemeanor is punishable by a fine not exceeding $500 or by imprisonment, or by both, a fine of $300 for malicious mischief by the destruction of household effects, in violation of Rev. Pen. Code, § 712, is not excessive.

One who, on becoming angry without cause, destroyed without justification and in a spirit of wantonness the property of another, violated Rev. Pen. Code, § 712, punishing the malicious injury or destruction of property.

(Opinion filed, Nov. 30, 1908.)

Appeal from Circuit Court, Jerauld County. Hon. FRANK B. SMITH, Judge.

John Tarlton was convicted of malicious mischief, and he appeals. Affirmed.

*T. H. Null*, for appellant. *S. W. Clark, Atty. Gen., Cloyd D. Sterling, Asst. Atty. Gen.,* and *J. G. Bradford, State's Attorney,* for the State.

CORSON, J.   Upon an information filed by the state's attorney of Jerauld county, the defendant, John Tarlton, in connection with three other persons, was charged and convicted of the offense of malicious mischief.   The other three persons named were acquitted under the direction of the court.   The information, omitting the formal parts and the names of the three persons acquitted, is, in substance, as follows: That John Tarlton on the 17th day of February, 1907, within the county of Jerauld, state of South Dakota, did commit the offense of malicious mischief, and did on the date mentioned willfully, unlawfully, maliciously, injure, deface, and destroy certain personal property, the same consisting of a stove, lamp, table, phonograph records, and other personal property, being the household effects of one William Collins, and not the property of him, the said John Tarlton.   On the trial evidence was introduced on the part of the state tending to prove: That the defendant, in connection with the other persons named, was at the residence or room occupied by William Collins on or about the night of February 17, 1907, from 8 o'clock in the evening until 2 or 3 o'clock in the morning of the following day.   That Collins occupied the room and had therein a stove, table, some chairs, lamps, phonograph, and records.   That for a couple of hours or more the said Collins operated the phonograph.   That a little past midnight he was requested by the defendant to play another piece, but he replied that his lamp had about burned out and he could not see any longer, and he refused to play it.   Thereupon the defendant proceeded to tip over the stove, break up the table and chairs and one of the lamps, and also to break and injure the phonograph by throwing it upon the floor.   That Collins then went to the home of the sheriff of the county, who returned with him to his room, and who described as a witness the condition in which he found the room and furniture, and on the next day, on complaint of Collins, the parties were arrested, and upon a preliminary examination were held to answer to the circuit court.   It further appeared from the testimony that during the time the persons were present in the room of the complaining witness they, together with Collins, drank whisky two or three times from a bottle and jug that Collins had on his premises.

As one ground for the reversal of the judgment, it is contended by the defendant that the court erred in sustaining the objections of the state's attorney to the following questions asked the defendant when a witness on the stand in his own behalf on his direct examination, namely: "(1) What do you say, if anything, with reference to any money being left there anywhere during this drinking? (2) During the time that the whisky was being passed and the music was played, did you boys chip up any money to pay Mr. Collins"—to which objection was made by the state's attorney as irrelevant, immaterial, and incompetent. This objection was sustained by the court, and we think properly so, for the reason that the question of whether or not Collins received any money for the whisky was clearly immaterial in this case.

The contention of the defendant that the evidence was admissible to impeach the credibility of the witness Collins is clearly untenable. Mr. Thompson, in his work on Trials (section 489), in discussing the question of impeaching the credit of a witness, says: "There are but four modes of impeaching the credit of a witness: (1) By cross-examination. (2) By proving previous contradictory statements or acts. (3) By producing the record of his conviction of some infamous crime. (4) By adducing general evidence tending to show that he is unworthy of belief on his oath." It will be observed that in the case at bar the questions were propounded to the defendant while a witness on the stand in his own behalf as a part of his direct testimony. No foundation had been laid for proving any contradictory statements on the part of Collins, no record of his conviction produced, and there was no evidence tending to show that the prosecuting witness was unworthy of belief. The court therefore was clearly right in sustaining the objection of the state's attorney to the questions propounded.

It is further contended by the defendant that the court erred in its charge to the jury in defining the term "malice," in that it instructed them that "such acts or conduct toward or in relation to the property of another as evinces a disposition of wanton deviltry and reckless disregard of the rights and property of another is, in law, malice, the same as if he had a well-formed design in his

Vol. 22 S. D 32

mind to annoy or injure the owner of the property." While it is true that malice is an essential element of the offense of malicious mischief, the malicious intent may be inferred from the nature of the act and the circumstances of the case. 19 Am. & Eng. Enc. of Law, 641; 25 Cyc. 1676. The offense of which the defendant is charged is defined by section 712 of the Revised Penal Code as follows: "Every person who maliciously injures, defaces or destroys any real or personal property not his own, in cases other than such as are specified in the following sections is guilty of a misdemeanor. * * *" And by section 811 "malice" is defined as follows: "The terms 'malice' and 'maliciously,' when so employed, import a wish to vex, annoy or injure another person, established either by proof or presumption of law." The meaning of the terms "malice" and "malicious" are not very clear as defined by this section. In Territory v. Egan, 3 Dak. 119, 13 N. W. 568, the learned territorial Supreme Court, in defining "malice," says: "The authorities are uniform upon the question of malice; although not in the exact language of our statute, they all define, in substance, 'malice' to be that state of mind or act when one willfully does that which he knows will injure another's person or property." This definition of the term for the purpose of that case, it being a homicide case, was probably sufficient; but it does not contain all that is necessary to constitute maliciously injuring or destroying personal property within the meaning of the terms as used in section 712 of the Revised Penal Code. To constitute an offense under that section the act must not only be done willfully, but for the purpose of avenging some real or imaginary wrong sustained by the party charged with the commission of the offense. In discussing the offense of malicious mischief, Mr. Bouvier, in his Law Dictionary, uses the following language: "To sustain a conviction of the offense of malicious mischief the jury must be satisfied that the injury was done either out of spite or wanton cruelty or of wicked revenge." In Com. v. Walden, 3 Cush. (Mass.) 558, the jury was instructed on the trial that the word "maliciously," upon which the indictment was framed, meant "the willfully doing of any act prohibited by law and for which the defendant had no lawful excuse, and that moral turpitude of mind was not necessary

to be shown." In discussing this question, the Supreme Court of Massachusetts held that the instruction was erroneous, and says: "If this definition of the crime charged were correct, it would follow that the words 'willfully' and 'maliciously' were intended by the Legislature to be understood as synonymous, and that the statute is to be construed in the same manner as it would be if the word 'maliciously' had been omitted. Such a construction we are of the opinion cannot be sustained, for, if it could be, it would follow that a person would be liable to be punished criminally and with great severity for every willful trespass, however trifling the injury might be to the personal property of another, which could not be justified or excused in a civil action against him for the recovery of damages by the owner. * * * The evidence therefore should have been submitted to the jury with instruction that they would not be warranted in finding a verdict of guilty unless the injury charged in the indictment was done by the defendant not only willfully, but also maliciously. * * * The jury should also have been instructed that, to authorize them to find the defendant guilty, they must be satisfied that the injury was done either out of a spirit of wantonness, cruelty, or wicked revenge." The court in its charge to the jury in the case at bar, as we have seen, instructed them "that such acts or conduct in relation to the property as evinces the disposition of wanton deviltry and reckless disregard of the rights of another is, in law, malice." This, in connection with the language of the court in another part of its charge, clearly conveys to the jury the information that they must not only find the defendant did the act willfully and intentionally, but that he did it wantonly and in effect in a spirit of revenge, and the instruction therefore, under the authorities, was substantially correct.

It is also contended by the defendant that the court committed error in its following instruction to the jury: "The good order and welfare of a community is at stake. No matter whether a man breaks up a lot of property or a little, if he does it in that spirit of wanton cussedness, as we sometimes term it, or with a wish to annoy, vex, or injure some other person, why, of course, he should be punished"—on the ground that it was in the nature of a lecture to the jury on their duty in the premises and evinced a desire and

an intimation on the part of the court that they should convict the defendant. But we discover no error in this instruction. In Abbott's Trial Brief (2d Ed.) 489, that learned author says: "The judge must not coerce the jury into an agreement on a verdict by intimidation or threats to subject them to any unreasonable inconvenience. Yet he may and ought to urge upon the jury all proper motives to induce them to agree upon a verdict, such as the propriety of a spirit of legal concession in their deliberations, and the importance to the parties and the public of a verdict and the saving of time and expense of a new trial."

It is further contended by the defendant that the court erred in imposing a fine of $300, for the reason that such fine was excessive; but the amount of the fine was within the discretion of the trial court, and, when the penalty is within the sound discretion of that court, it will not be reviewed, unless its discretion is clearly abused. 12 Cyc. 906. In the section defining malicious mischief, no punishment is provided; but a person violating the statute is declared to be guilty of a misdemeanor. By section 14 of the Revised Penal Code, it is provided: "Except in cases where a different punishment is prescribed by this Code, or by some existing provisions of law, every offense declared to be a misdemeanor is punishable by imprisonment in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment." And the sentence therefore imposed by the trial court will not ordinarily be reversed on appeal, on the ground that it is excessive. State v. Barrett, 40 Minn. 65, 41 N. W. 459; People v. Kelley, 99 Mich. 82, 57 N. W. 1090; Weinecke v. State, 34 Neb. 14, 51 N. W. 307; Wright v. State, 45 Neb. 44, 63 N. W. 147.

It is further contended by the defendant that the testimony is insufficient to sustain the verdict for the reason that the acts alleged to have been committed were not committed maliciously; but having listened to all the evidence and the instructions of the court which defines the offense properly, it was for the jury to determine whether or not the defendant did the acts alleged and proven maliciously, and we are of the opinion that the verdict was fully justified by the evidence in the case.

It is quite clear from the evidence that, upon Collins' refusal to play the additional piece requested by the defendant, he became angry, and without any justifiable cause, in a spirit of wantonness and revenge, destroyed the property of the said Collins. If, as charged by the court, the act was done by the defendant recklessly and wantonly and without any justifiable cause, he was guilty of the offense as charged.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.