144 P.2d 676

**REA v. MOTORS INS. CORPORATION.**

No. 4800.

Supreme Court of New Mexico.

Jan. 5, 1944.

E. E. Young, of Roswell, for appellant.

L. O. Fullen, of Roswell, for appellee.

MABRY, Justice.

J. E. Rea, plaintiff-appellant (hereinafter called appellant) brought suit against Motors Insurance Corporation, Inc., defendant-appellee (hereinafter called appellee) to recover upon a certain insurance policy issued by appellee in favor of appellant upon his certain automobile alleged to have been damaged to the extent of $504.05 through "malicious mischief", resulting in a "collision" and arising through the conduct of one Ross Ledbetter.

The trial court held that the accident complained of, while constituting malicious mischief, did not afford recovery under the insurance policy relied upon since such injury to appellant's car was brought about through "collision", for which there was no insurance coverage, and not through "malicious mischief". Recovery was denied and this appeal follows.

Appellant's car, while properly parked on a main street in the city of Roswell, New Mexico, was struck and substantially damaged and injured through collision with a car driven by the said Ross Ledbetter who struck the parked car, and who was, at the time, driving upon the street under the influence of intoxicating liquor and driving in a wanton, willful, reckless manner. Under the policy of insurance relied upon appellant was protected under coverage which provides for (A) fire, lightning and transportation; (B) theft; (C) combined additional coverage including among other things "malicious mischief" and "vandalism"; and (D) comprehensive —certain additional specified loss of or damage to automobile, excluding that resulting from collision. It is upon coverage C above mentioned that appellant relies. Sec. D of the policy reads: "Any loss of or damage to the automobile except loss by collision of the automobile with another object * * *". The policy further shows that this Sec. D embraces what is commonly known as "comprehensive" coverage "including A, B and C." There is an additional Sec. E entitled "collision or upset" under which it is agreed appellant was not insured; and it is because there was no protection under this section that appellee relies in sustaining the lower court's judgment. This Section E covers "loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile * * *".

Although appellant presents and argues the matters here urged for review under several points, the question presented can very appropriately be disposed of, as appellee shows, by consideration of the single question of whether or not the damage resulted from "collision" as distinguished from "malicious mischief". If from collision only, obviously appellant cannot prevail.

The trial court held that the act of Ledbetter in so driving his car down the street while intoxicated. and in the wanton, willful, reckless manner in which he was operating it, was sufficient in law to constitute "malicious mischief", and would, therefore, come within the coverage defined in Sec. C of the policy; but, it further holds, that since the damage resulting from such acts was, nevertheless, caused by a collision, and there being no coverage for damage through collision, appellant could not recover. Appellee urges .(and he has appropriately saved the question for review) that, notwithstanding the trial court was correct in appraising the damage incurred as that resulting from a collision, and therefore outside the policy coverage, that, nevertheless, the court was wrong in appraising the conduct of the driver as "malicious mischief".

The following embraces the entire language found under the insuring agreements of the policy and heretofore referred to as coverage Sections A, B, C, D and E:

"*Coverage A—Fire, Lightning and Transportation:* Loss of or damage to the au-

tomobile caused (a) by fire or lightning, (b) by smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the automobile is located, or (c) by the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported on land or on water.

"*Coverage B—Theft (Broad Form)*: Loss of or damage to the automobile caused by theft, larceny, robbery or pilferage.

"*Coverage C—Combined Additional Coverage*: Loss of or damage to the automobile caused by windstorm, earthquake, explosion, hail, external discharge or leakage of water, flood or rising waters, riot or civil commotion, the forced landing or falling of any aircraft or of its parts or equipment, or malicious mischief or vandalism, except that $25 shall be deducted from the amount of each determined loss resulting from malicious mischief or vandalism. The retained minimum premium for this coverage shall be 25% of the annual premium.

. "*Coverage D—Comprehensive—Loss of on Damage to the Automobile, Except by Collision*: Any loss of or damage to the automobile *except* loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil

commotion shall not be deemed loss caused by collision or upset. (Emphasis ours).

"*Coverage E—Collision or Upset:* Loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."

The policy contains a further provision that it is "subject to the limits of liability, exclusions, conditions and other terms of the policy".

Appellee appropriately emphasizes the fact that the insurer, under Coverage D (the comprehensive clause), was particularly exempted from liability for damages to appellant's car resulting from collision; that coverage D also includes, among specific coverages, A, B and C already mentioned, but that liability under Coverage E, (the coverage specifically going to damages from collision) which appellant elected not to procure, is expressly exempted.

The record clearly shows that the sole damage to appellant's car was occasioned by the impact from the Ledbetter car which was driven into it while parked upon the city streets. There is no dispute that a collision occurred and that damages resulted therefrom.

■ We should have no trouble in arriving at an understanding of what is meant by "collision". We find the general principle laid down in vol. 6 of Blashfield's

Cyclopedia of Automobile Law and Practice, Perm. Ed., § 3691, where it is stated: "One common type of automobile insurance policy is that expressly covering damages to the insured car by reason of its being in accidental collision, during the life of the policy with another automobile, vehicle, or object. The word 'collision' in such a policy has its ordinary meaning of striking together or striking against. It includes the case of an automobile striking against another object, alike whether the object be standing or in motion, or regardless of whether both bodies are in motion, or one, no matter which, is stationary, and the other in motion."

See, also, Moore v. Union Mutual Fire Ins. Co., 112 Vt. 218, 22 A.2d 503.

Appellee urges that appellant must recover, if at all, (a) under the malicious mischief clause of the policy upon the theory that Ledbetter's conduct amounted to malicious mischief within the meaning of the insurance policy, and then (b) it must be shown, in addition, that the damage suffered was proximately occasioned by such "malicious mischief" and not by "collision" as the term is to be understood. Drunken and reckless driving, argues appellee, absent any specific design to injure, does not constitute malicious mischief—and this is the controlling point to be decided; that because damage through malicious mischief was made a recoverable injury in a portion of the policy separate and apart from that where "collision" is referred to and provided for, it could not be coupled with and treated as synonymous with the term "collision"; that two separate and distinct injuries are thus contemplated by the contract of insurance and recovery cannot be had for damages resulting from malicious mischief when such damages necessarily flowed from an ordinary collision; that the damages here complained of did, in fact, result from an ordinary collision against which appellant chose not to insure.

Appellee agrees that had malicious mischief been done, with some injury resulting therefrom before the collision and under circumstances where the degree of the two injuries—that arising from malicious mischief and that flowing from the collision—could be reasonably segregated, recovery might be had for the malicious mischief as distinguished from the additional injury which was caused by the collision. There seems to be no contention here, however, that there is any place to apply such rule of separation, since there was no injury resulting to appellant's car by the driver Ledbetter prior to the impact of the two automobiles. If the damage were from collision, correctly argues appellee, it is not necessary to search for proximate causation, or malice, on the part of the offending driver. That is to say that had there been coverage for collision, recovery would lie whether the injury was occasioned by a drunken or willful, wanton and reckless driver or through pure accident; or whether, in fact, it was caused by studied design of the offending driver to injure.

There being no dispute as to the facts, we have, therefore, a case involving, simply, the construction of the insurance contract. Counsel for both parties concede that they have found no case deciding the exact question here presented. We are unable to ascribe to drunken and reckless driving, the ingredients necessary to constitute malicious mischief within the meaning and terms of the contract of insurance, which expressly excepts "loss caused by collision of the automobile with another object * * *", (Sec. D).

■ Appellee refers to our reckless driving statute, Sec. 3 of Chapter 75 Laws of 1929, 1941 Comp. Sec. 68-503, as lending strength to his argument that malicious mischief implies something entirely different from acts and conduct of the driver of an automobile such as here present themselves; that malicious mischief implies intentional wrong definitely attempted and inflicted, such as is provided by Sec. 29 of Chap. 150 of the Laws of 1919, 1941 Comp.Laws Sec. 68-152. This last section, appellee urges, covers offenses involving malicious, or willfully designed molestation, or destruction of an automobile or any parts or accessories thereof; that this would be distinguished from Sec. 3 of Chap. 75, supra, which defines reckless driving and provides for punishment therefor; and, likewise, it would be distinguished from Sec. 2 of the same act, 1941 Comp. Sec. 68-502, which deals with and provides punishment for the driver of a vehicle on the highways of the state while under the influence of intoxicating liquor or narcotic drugs. Reckless driving, we know, is to be distinguished from drunken driving, and a conviction of one offense would not bar prosecution for the other. State v. Sisneros, 42 N.M. 500, 82 P.2d 274.

Appellant, on the other hand, suggests that Sec. 29 of Chap. 150 of the Laws of 1919, supra, cannot be considered in appraising the situation here for the reason that such legislation might be unconstitutional because the subject of the legislation attempted in said act, as to its full scope, was not clearly expressed in its title. However, the question whether said Chap. 150 properly embraced malicious mischief there sought to be defined because of defective title, as suggested by appellant, we need not, and do not, decide. Obviously, the Legislature was there endeavoring to define specifically many acts which would, under the common law, and ordinarily, be appraised as acts of malicious mischief. Without placing any reliance upon that particular legislation we have no difficulty in saying that, under the insurance policy relied upon, where coverage for collision was available and could have been obtained, but where, clearly, it was not embraced in the contract, being, rather, expressly excluded by the very terms of the policy itself, that the terms "collision" and "malicious mischief" apply to separate and distinct situations and stand upon entirely different and distinct footings as insurable hazards.

■ There is nothing in the record to indicate that Ledbetter purposely struck the

car of appellant. He might as well have struck one or more of many other cars likewise parked upon the street. If it is to be that any drunken or wanton, willful or reckless driver upon the highways who collides with or injures another automobile is to be adjudged guilty of malicious mischief, as the term is employed in this policy, there would, indeed, be little necessity for any coverage for damages through "collision". That the parties contracting intended that the terms should be applied independently, and not synonymously, it seems to us is sufficiently reflected in the terms of the policy itself which (a) .expressly exempts "collision" under its general comprehensive clause (coverage D), and which provides in the following and distinct clause or schedule (coverage E) coverage for "collision or upset" for those who want to purchase such protection. Appellant elected not to insure against collision or upset.

■ The learned trial judge held that the proximate cause of the damages suffered arose from the collision, against which hazard appellant was not insured, although concluding, as a matter of law (this conclusion being inappropriately denominated a finding) that the conduct of Ledbetter amounted to malicious mischief. Appellee reserved an appropriate exception to such last-mentioned conclusion, and here contends, correctly, that in any event there was no malicious mischief involved.

■ Much is said by appellant of how a contract of insurance is to be strictly re-solved against the insurer, he who prepares the form of contract. Such a rule is not questioned by appellee except to say, and we agree, that where no ambiguity or uncertainty appears no place is found for the operation of the rule, citing Sneddon v. Massachusetts Protective Ass'n, 39 N. M. 74, 39 P.2d 1023, and 29 Am.Jur. 180, Sec. 166, and other authority.

■ The trial court employs the term "malicious" in defining the manner of operation of the Ledbetter car, but this must be denominated a mere conclusion of law, and an erroneous one at that, once we say that, absent an actual purpose or design to do injury—a premise not questioned—the conduct complained of could not come within the definition of malicious mischief as contemplated by the contract and as the term is to be understood.

■ The common-law offense of "malicious mischief" was defined in Johnson v. State, 18 Ala.App. 70, 88 So. 348, as "malicious or mischievous injury * * * done in a spirit of wanton cruelty or black and diabolical revenge." And, that malice towards the owner of the property injured is essential to constitute the offense. See, also, Thissen v. State, 21 Okl.Cr. 437, 209 P. 224; Haag v. State, 87 Tex.Cr.R. 604, 223 S.W. 472; Lewis v. State, 55 Okl.Cr. 182, 27 P.2d 363.

Malice towards the owner of property injured is an essential element of "malicious mischief", and in the absence of evidence of malice, actual, express, or implied, a motion for directed verdict should be sus-

tained, it was held in Hummel v. State, 69 Okl.Cr. 38, 99 P.2d 913, 916; and, continuing, the court states that "malicious mischief" implies malice toward the owner of the property injured.

"In prosecution for malicious mischief, malice towards the owner of the property injured is the gravamen of the offense, without which it would be a mere trespass." Colbert v. State, 7 Okl.Cr. 401, 124 P. 78, 79.

■ The term "malicious injury" contemplates the infliction of a wrongful injury "intentionally". State v. Heugin, 110 Wis. 189, 85 N.W. 1046, 62 L.R.A. 700. "Willful and malicious injury" may be distinguished from "malice" which involves a mere disregard of duty which is apparent from the intentional doing of a willful act to the injury of another. Shabaz v. Henn, 48 Ga.App. 441, 173 S.E. 249, 251; And, it must grow out of "cruelty, hostility or revenge", says the court in Wing v. Wing, 66 Me. 62, 64, 22 Am.Rep. 548. See, also, Sharkey v. Skilton, 83 Conn. 503, 77 A. 950. Driving an automobile at a "grossly excessive" speed has been held not to preclude discharge in bankruptcy for "willful" or "malicious conduct". In re Vena, D.C.Wash., 46 F.2d 81.

■ "Maliciously" means with a deliberate "intention to injure." May v. Anderson, 14 Ind.App. 251, 42 N.E. 946, 947. "Maliciously" has a somewhat larger meaning than "willful", it was held in Shotwell v. State, 43 Ark. 345, 347; and it has been said that "maliciously" involves

more than simple "willfullness". The act must have grown out of a willful purpose to avenge a wrong before it can amount to "malicious injury * * * of property", it was held in State v. Tarlton, 22 S.D. 495, 118 N.W. 706, 707.

We are not unaware that courts have frequently employed the word "maliciously" synonymously with "willfully", and that they frequently permit malice to be implied from the very nature of the act without reference to whether the consequences resulting were actually intended; but such holdings so far as our search discloses have never gone so far as to apply such definition to "malicious mischief" as we understand and hold it to have been employed under the circumstances here controlling. And, moreover, we could not accept as sound such holdings if they were to be found.

To adopt appellant's definition of collision, as contemplated by the contract, would be to confine the term to purely accidental collisions only. It would be to say that every collision arising out of wantonly reckless driving, or driving while intoxicated, though wholly without design or purpose to injure another or his property, would not be covered by these standard policy forms against collision, but would have to come under the malicious mischief clause; and, therefore, if the coverage under Section D, which includes malicious mischief and vandalism, be not in force because not covered by the particular premium paid, there could be no recovery.

We cannot accept such illogical reasoning. It seems clear to us that with this form of contract before us, where insurance against "collision or upset" and "malicious mischief or vandalism" are specifically provided for under separate clauses of the policy, thus permitting the insured to elect whether he desires both, either or neither of these coverages, there need be no great difficulty in application, or construction.

This does not involve a consideration of whether the trial court properly held that, although the conduct of Ledbetter amounted to malicious mischief, since the damages actually resulted from a collision for which there was no coverage, appellant could, in no event, prevail. This holding was, perhaps, in view of, as it clearly was in line with, the rule laid down in Shahin v. Niagara Fire Ins. Co., 265 App.Div. 397, 39 N.Y.S.2d 887.

We need not decide, and upon the question we express no opinion, as to whether, if the driver, Ledbetter, had been engaged in malicious mischief directed against appellant or his automobile that recovery could not be had regardless of whether the damages resulted directly from the collision of the two cars.

We need not attempt to relate proximate causation separately as to either event. It is enough to say, as we do, that the conduct of Ledbetter is not to be defined as malicious mischief within the meaning of the contract of insurance and that any damages proximately flowing from his acts were damages resulting from

a "collision" between the two automobiles for which appellant was not insured.

Finding no error, the judgment is affirmed, and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.