886 P.2d 981

Sharon J. MONTGOMERY,
Plaintiff–Appellant,

v.

UNITED SERVICES AUTOMOBILE AS-
SOCIATION, a reciprocal insurance
company, Defendant–Appellee.

No. 15786.

Court of Appeals of New Mexico.

Oct. 28, 1994.

Anthony Lawrence Romo, Romo & Associates, a Professional Corp., Albuquerque, for plaintiff-appellant.

William R. Gralow, Civerolo, Wolf, Gralow & Hill, P.A., Albuquerque, for defendant-appellee.

## OPINION

BOSSON, Judge.

The single issue in this appeal is whether damage to personal property within a dwelling, when caused by a wild animal, constitutes "vandalism and malicious mischief" as that term is defined in a renters property and casualty policy. Plaintiff's policy defines vandalism and malicious mischief as "intentional and malicious damage." While the policy was in effect, a bobcat entered Plaintiff's dwelling and damaged certain personal property. The insurer denied Plaintiff's claim because destruction of property by a bobcat did not constitute "vandalism." The trial court ruled against Plaintiff because a "bobcat cannot develop an intent or malice" as those terms are used to define "vandalism."[1] We affirm the ruling of the trial court.

---

1. In addition to its formal judgment, the trial court orally announced its ruling at the conclusion of the case as follows:

The scarecrow wanted a heart.
He wanted it from the start.

The tin man wanted a brain.
So he could be the same.

And it was courage asked for by the lion,

even though he was always crying.

In this case the bobcat needs "intent".
Or did he just rely on his scent?

Alas, it is written in the law
that the animal with the paw
does not have the mind
to do the damage of this kind.

## DISCUSSION

The thrust of Plaintiff's argument is two-fold. First she asserts that the term "vandalism" within the policy is ambiguous and thus should be construed in favor of the insured. *See Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n*, 113 N.M. 162, 167, 824 P.2d 302, 307 (1992). This ambiguity is allegedly created by the conflict between the policy definition of vandalism, which is limited to "the intentional and malicious damage" of property, and the broader, ordinary meaning of the word, which in her view includes the "ignorant destruction" of property as well. Plaintiff then argues, in light of this ambiguity, that a reasonable person would expect to be covered under "vandalism" even for property damage caused by a bobcat. *See Ivy Nelson Grain Co. v. Commercial Union Ins. Co.*, 80 N.M. 224, 225, 453 P.2d 587, 588 (1969) ("[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.").

■ Defendant argues that this issue was not properly preserved for appeal because Plaintiff failed to: (1) request findings of fact and conclusions of law; (2) raise the issue of ambiguity in her pleadings or before the trial court; and (3) comply with SCRA 1986, 12–213(A)(3) (Cum.Supp.1994). We reject each contention. First, the failure to request findings of fact does not preclude us from reviewing legal issues. *See Board of County Comm'rs v. City of Las Vegas*, 95 N.M. 387, 389, 622 P.2d 695, 697 (1980); *State v. Heck*, 112 N.M. 513, 515, 817 P.2d 247, 249 (Ct.App.1991). Second, the issue of ambiguity is addressed in Plaintiff's argument that vandalism does not require intent. Third, although a technical violation of SCRA 12–213(A)(3) may have occurred, the transcripts and briefs sufficiently present the issue to allow review on the merits. *See Garcia v. Village of Tijeras*, 108 N.M. 116, 117 n. 1, 767 P.2d 355, 356 n. 1 (Ct.App.), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988).

And so, I'm sorry, the Plaintiff won't get paid. That's how the contract was made. This policy does not apply

■ On the merits, however, we agree with Defendant. The policy is not in any way ambiguous. In boldface print, the policy states that Plaintiff is protected against losses to personal property arising from "vandalism and malicious mischief." However, in ordinary print, the policy assigns its own definition to those terms which includes only "intentional and malicious damage." Despite the difference in type, a reasonable person reading the policy would conclude that only intentional and malicious damage was covered. *See Safeco Ins. Co. v. McKenna*, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977) ("Resort will not be made to a strained construction for the purpose of creating an ambiguity when no ambiguity in fact exists.").

Nor is there any conflict between use of the general term "vandalism" and the more limited definition of "intentional and malicious damage" which are both utilized simultaneously in the policy. Even conceding the argument that "vandalism" is broadly defined in modern dictionaries to include the "ignorant" destruction of property, this would not, in our judgment, encompass damage caused by a wild animal. *See, e.g., The Random House Dictionary of the English Language* 1579 (Unabridged ed. 1969) (defining "vandalism" as "willful or ignorant destruction of artistic or literary treasures"); *Webster's New Collegiate Dictionary* 1293 (1977) (defining "vandal" as "one who willfully or ignorantly destroys, damages, or defaces property belonging to another or to the public"). Where gauged by the standard of "what a reasonable person in the position of the insured would understand," *Ivy Nelson Grain Co.*, 80 N.M. at 225, 453 P.2d at 588, whether the term is "ignorant" damage or "malicious" damage, animals lack the mental capacity to inflict either.

This result is supported by the few decisions which have confronted this issue and the lack of any authority to the contrary. In *Roselli v. Royal Insurance Co.*, 142 Misc.2d 857, 538 N.Y.S.2d 898 (1989), an apartment was damaged by a deer. The homeowner's policy insured personal property against

when the bobcat runs awry.

damage by " '[v]andalism or malicious mischief'." The New York court acknowledged, as we do, that some modern dictionary definitions of vandalism include the "ignorant" destruction of property. However, these definitions also require the destruction to be in " 'conscious or intentional disregard of the rights of another.' " *Id.* 538 N.Y.S.2d at 899 (quoting *King v. North River Ins. Co.*, 278 S.C. 411, 297 S.E.2d 637, 638 (1982)). As such, the court concluded that vandalism "must be perpetrated by a human actor." *Id.*

Similarly, in *Stack v. Hanover Insurance Co.*, 329 So.2d 561 (Ala.Civ.App.1976), a deer damaged a home when it crashed through a bedroom window. The term vandalism in the homeowner's policy was defined as " 'only the wilful and malicious damage to or destruction of the property covered. . . .' " *Id.* Finding the policy unambiguous, the court reasoned:

> There is no question but that the popular meaning of vandalism is the intentional and malicious destruction of property. Such act requires a human mind capable of forming the requisite intent of committing a wrongful act, resulting in senseless destruction or damage to property either public or private.

> An animal, such as a deer, to the human mind, and in law, is incapable of forming an intent to commit a wrongful act or to act maliciously. An animal, non-human, acts or reacts instinctively without knowledge of right or wrong as defined by man.

> In the popular connotation of vandalism it is clear that the destruction of plaintiffs' property by the independent action of the deer in this case does not fall within the terms of the policy of insurance. An insurance policy without ambiguity in its terms must be enforced. . . .

*Id.* at 562 (citations omitted); *see Ditloff v. State Farm Fire & Casualty Co.*, 225 Neb. 375, 406 N.W.2d 101, 104 (1987) (in dictum, court stated that cattle could not have caused wilful or malicious damage to property because they could not form the necessary malicious intent); 5 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 3182.25 (Supp.1993); *see also Rea v. Motors Ins. Corp.*, 48 N.M. 9, 16, 144 P.2d 676, 680 (1944) (use of "malicious injury" in insurance clause contemplates intentional infliction of wrongful injury); *Imperial Casualty & Indem. Co. v. Terry*, 451 S.W.2d 303, 308 (Tex.Civ.App.1970) (policy insuring against loss caused by "malicious mischief" must show that damage was caused by acts intended to damage the property in question); *Great Am. Ins. Co. v. Dedmon*, 70 So.2d 421, 422 (Ala.1953) (vandalism originates from the Vandals, a Germanic people of the 4th and 5th centuries known for pillaging other lands).

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

IT IS SO ORDERED.

DONNELLY and BLACK, JJ., concur.