Cassie **HUDSON**, formerly Cassie **Kapp**, **F. E. Hudson**, her husband, and **Floyd Kapp**, Plaintiffs in Error,

v.

George W. **LEE** et al., Defendants in Error.

No. 40508.

Supreme Court of Oklahoma.

June 16, 1964.

L. Keith Smith, Jay, Jack L. Rorscach, Vinita, for plaintiffs in error.

C. N. Haskell, Tulsa, Charles C. Chesnut, Miami, Richard L. Wheatley, Jr., Vinita, for defendants in error.

IRWIN, Justice.

Defendants in error, hereinafter referred to as plaintiffs, constructed private fishing, boat and swimming docks on the shores of Grand Lake. Subsequent to the construction, the Grand River Authority, referred to as GRDA, adopted certain rules relating to such docking facilities. These rules provided that no permit shall be issued for the construction, maintenance and operation of any docking facilities to any person who does not own the shore land abutting the shore line of Grand Lake adjacent to the location of the docking facilities, unless the applicant for the permit first obtains the written consent of such abutting land owner; if the abutting land owner should cancel his consent, then the permit would be cancelled by GRDA; and, if any docking facilities are constructed, maintained and operated in violation of the above rules, GRDA, after notice to the owner of the facilities would cause the same to be removed at the expense of the owner.

On February 12, 1962, GRDA issued an order, effective on March 1, 1962, cancelling plaintiffs' docking permits, and requiring plaintiffs to remove such facilities. Such order was issued on the theory that Cassie Hudson, formerly Cassie Kapp, F. E. Hudson, her husband, and Floyd Kapp, plaintiffs in error, were the abutting land owners adjacent to the location of the facilities, and that they had not consented to the renewal of plaintiffs' docking facility permits.

Plaintiffs commenced this action to enjoin GRDA from enforcing its order of February 12, 1962, or otherwise revoking or cancelling their docking facility permits, and to enjoin the other defendants from further proceeding before GRDA to obtain cancellation of their permits and asserting or claiming that plaintiffs should be required to obtain their consent before plaintiffs' docking permits could be issued. Plaintiffs' theory is that by virtue of an easement granted to them in 1945, by the then owner of the abutting shore land, the consent of the individual defendants was not necessary because the easement was sufficient to meet GRDA's requirements.

The trial court found and adjudged that the easements granted to plaintiffs in 1945, gave them the right of ingress and egress for the purpose of installing and using the docking facilities and perpetually enjoined the individual defendants from interfering in any manner with plaintiffs' enjoyment of said rights. In the journal entry of judgment, the trial court perpetually enjoined GRDA from cancelling plaintiffs' docking permits upon the grounds that plaintiffs did not have the written consent of the abutting land owners. The trial court later modified its judgment against GRDA to the extent that the easements granted to plaintiffs in 1945, was sufficient to give written consent under the rules and regulations promulgated by GRDA.

The individual defendants, plaintiffs in error, perfected this appeal from the order overruling their motion for a new trial. GRDA did not perfect an appeal.

## FACTS

In September, 1945, one M. R. Kapp, was the owner of certain land abutting the shore line of Grand Lake. On September 19, 1945, M. R. Kapp, joined by his wife Cassie (one of the plaintiffs in error), conveyed by separate deeds to the individual plaintiffs or their immediate grantors, six lots or cabin sites. None of the deeds conveyed lots or cabin sites which abutted the shore line of Grand Lake, but each deed contained this provision immediately after the description, "Together with the right of ingress to and egress from the above de-

scribed land on roads designated by grantors to the nearest public highway touching other lands now owned by the grantors herein, *and the right of ingress and egress across the land between the above described land and the waterfront of Grand Lake * * *.*" (emphasis ours).

The evidence discloses that the right of ingress and egress referred to covers a narrow strip of land which is parallel to the contour of the shore line of Grand Lake and the same was used as a roadway. The ground drops sharply from the strip of land toward the shore line and is not suitable for cabin sites. In 1946, one of the plaintiffs constructed a cabin on his lot and a swimming dock. Mr. Kapp picked the location for the swimming dock and at the same time picked locations for two additional docks. In 1946 or 1947 two sets of concrete steps were built from the roadway down to the level of the shore line. The location of the steps was picked by Mr. Kapp and he and Cassie Kapp (Hudson) were present when the first dock and steps were constructed and neither objected to such construction. Prior to Mr. Kapp's death in 1948, the construction of a second dock was commenced and after his death two more docks were constructed.

Cassie Kapp, who later married defendant F. E. Hudson, and defendant Floyd Kapp succeeded to the ownership of the interest of Mr. Kapp after his death. Cassie Kapp Hudson was present when the last three docks were constructed and made no objections.

One of the plaintiffs testified that he had a conversation with Cassie Kapp Hudson and she told him they retained the strip of land to keep some one from fencing the roadway and they wanted the roadway to remain open so they could have access to their other land and to a little cove where they were going to construct a dock. Another plaintiff testified, without objection, that Mr. Kapp assured him when he purchased his lot that the same was a lake front lot. Another plaintiff testified that while he was finishing the inside of his cabin. Cassie Kapp Hudson came by and during their conversation he told her he was going to build a dock and she made no objection.

The evidence discloses that in 1959, when the last dock was built, GRDA notified one of the plaintiffs that a permit would have to be secured; that when application for the permit was made, GRDA required the written consent of Cassie Kapp Hudson; that she refused to give her consent unless she was paid $120.00 by plaintiffs; that $120.00 was paid for 1959, and $120.00 for 1960; that plaintiffs refused to pay $120.00 for 1961 and Cassie Kapp Hudson refused to consent to the docking facilities without further payment. GRDA's refusal to issue the permit without her consent precipitated the present action.

Cassie Kapp Hudson in her testimony denied that she talked with plaintiffs about the construction of the docking facilities. She admitted she knew the docks were there but she did not consent to the construction thereof, although she made no objections between 1946 and 1959.

## PROPOSITION I

Defendants contend that the deeds conveying the lots or cabin sites to the plaintiffs or their immediate grantors, which granted the right of ingress and egress over the narrow strip of land, are unambiguous; that the deeds are clear upon their face; that the construction of the deeds must be made from the four corners of the deeds; and that parol evidence is not competent to explain or vary their terms.

In Town of Fort Cobb v. Robinson, et al., 193 Okl. 660, 143 P.2d 122, we held that the conveyance of an easement gives the grantee all rights as are incident or necessary to the reasonable and proper enjoyment of the easement granted.

In Purcell v. Thaxton, 202 Okl. 612, 216 P.2d 574, we held:

"A court of equity will look at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, the

intention of the grantor will be gathered from the whole instrument. If the intention of the parties to the deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed, but where a deed possesses an element of uncertainty, parol evidence, the admissions of the parties, and other extraneous circumstances may be proved to ascertain its true meaning."

In Lahman v. Bassel, Okl., 373 P.2d 245, we held:

"A cardinal rule in construing a deed is ascertaining the true intent of the makers, as that intent may be discerned from the instrument itself, taking it all together, considering every part of it and viewing it in the light of the circumstances surrounding the makers at the time of its execution; and their later acts in connection therewith may be considered in arriving at their intention."

In Cities Service Gas Company v. Christian, Okl., 340 P.2d 929, we held:

"In construing an easement, a court is privileged to place itself in the position of the parties at the time the easement was entered into, and adopt that permissible construction of the easement which will make it fair and reasonable under all of the facts and which will carry out the intent of the parties."

■ In considering the rights granted as would be incident or necessary to the reasonable and proper enjoyment of the easement which granted "the right of ingress and egress across the land between" the lots or cabin sites "and the waterfront of Grand Lake," the extent of the easement possesses an element of uncertainty. The intention of the parties cannot be gathered from the four corners of the instrument. In attempting to determine the real object of the grant and the intention of the parties, the trial court admitted evidence concerning the circumstances surrounding the execution of the deeds and the acts of

the parties subsequent to the execution and the delivery.

We hold that since the intention of the parties could not be gathered from the instrument itself and the provision relating to the right of ingress and egress possessed an element of uncertainty, evidence was admissible to ascertain and determine the true intention of the parties and the trial court did not err in admitting such evidence.

■ We further hold that the trial court's judgment determining that the easement, when considered in the light of the circumstances surrounding the parties at the time of its execution and the subsequent actions of the parties, granted the right of ingress and egress for the purpose of installing and using docking facilities, is not against the clear weight of the evidence.

## PROPOSITION II

■ Defendants contend estoppel, or equitable estoppel, cannot be used as a theory by which title to real estate may be affected.

We do not find that the trial court determined that plaintiffs acquired a fee title to any portion of the land contained in the strip between the lots or cabin sites and the shore line of Grand Lake; but determined that "the easement in question gives the right of ingress and egress for the purpose of installing and using docks in front of the property."

"Estoppel" as employed by the trial court, related to and was used in connection with the circumstances surrounding the parties when the deeds were executed and the subsequent actions of the parties after the deeds were executed. By such circumstances and actions the trial court determined the true intent of the parties and the object and purposes for which the deeds were executed. The trial court, in effect, determined that defendants were estopped by their subsequent action, when considered in connection with the circumstances surrounding the execution of the deeds and

the contents of the deeds, to deny that the easement in question did not give plaintiffs the right of ingress and egress for the purpose of installing and using docks in front of the property.

Therefore, if we assume that estoppel, or equitable estoppel, cannot be used as a theory by which title to real estate may be affected, such rule is not applicable in the case at bar.

## PROPOSITION III

In 1959 and 1960, plaintiffs paid to defendants $120.00 for consent to maintain the docking facilities. Defendants contend that plaintiffs became tenants of defendants for these years and thereby recognized defendants' (landlord's) title; and plaintiffs are estopped from claiming an adverse title without first surrendering possession.

Although we agree with the rules of law promulgated in the cases cited by defendants, we can not sustain defendants' argument that they are applicable in the case at bar. The evidence discloses that for the year 1959, the $120.00 was paid to secure the permit to keep GRDA from removing the docking facilities and the payment for 1960 was made to give plaintiffs time to work out an amicable settlement with defendants to avoid court action. The evidence further discloses that an amicable settlement was not made and plaintiffs sought relief by filing the present action.

Whether the money for 1959 and 1960 was paid for the purpose of keeping GRDA from removing the docking facilities and securing time to work out an amicable settlement with defendants, or was made under circumstances tending to establish that plaintiffs recognized a landlord-tenant relationship was a question to be resolved by the trial court. This evidence, with the other evidence, formed the basis for the judgment rendered by the trial court and its judgment was adverse to the claims of defendants.

■ The findings and judgment are not clearly against the weight of the evidence

and the same will not be disturbed on appeal. See Brown v. Greever, Okl., 379 P.2d 689.

## PROPOSITION IV

Defendants' last contentions concern the judgment rendered against GRDA. These contentions are: The rules and regulations of GRDA were promulgated legally and are being enforced fairly and the courts have a duty to uphold the same; and the theory of estoppel is not applicable against the State of Oklahoma, or its agencies (GRDA); and GRDA has the right and duty to amend or alter its rules and regulations from time to time and the plaintiff dock owners have no vested right in placing docks on Grand Lake.

GRDA's authority and power to promulgate the rules and regulations under consideration or the authority and power to amend the same are not challenged. Plaintiffs' action against GRDA and the judgment rendered against GRDA, are premised on the grounds that they have met the requirements of the rules and regulations of GRDA and the consent of defendants for the issuance of a permit was unnecessary. On the other hand, GRDA was interested only in the enforcement of its rules and regulations and was not concerned with the proprietary rights of plaintiffs and defendants.

The judgment against GRDA was incidental to the judgment rendered against defendants for the reason such judgment was based on the findings of the trial court that the easement granted to plaintiffs the right of ingress and egress for the purpose of installing and using the docking facilities and that the written consent to maintain the docking facilities was unnecessary. In other words, plaintiffs' action against GRDA was dependent upon their prevailing against defendants.

■ The trial court's judgment which, in effect, determined that plaintiffs' right of ingress and egress for the purpose of installing and using the docking facilities was sufficient to meet the requirement of an

abutting land owner, and made it unnecessary to secure the consent of defendants, has become final against GRDA for the reason GRDA did not perfect its appeal. Therefore, the issue as to whether plaintiffs' right of ingress and egress for the purpose of installing and maintaining their docking facilities without the written consent of defendants is sufficient to entitle them to a permit to maintain their docking facilities under the rules and regulations of GRDA, has been determined and such determination has become final. Defendants are precluded from challenging such determination in their appeal.

Judgment affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WILLIAMS, JACKSON and BERRY, JJ., concur.