# Irene B. Edwards, Betty H. Flory, Glennard E. Purvee and Lola H. Purvee v. Henry Fugere and Viola Fugere

[287 A.2d 582]

No. 26-71

Present: Shangraw, Barney, Smith and Keyser, JJ., and Daley, Supr. J.

Opinion Filed February 1, 1972

*McKee, Clewley & FitzPatrick*, Montpelier, for Plaintiffs.

*M. Martin Leinwohl*, Barre, for Defendants.

**Smith, J.** This cause was heard upon a petition for declaratory judgment on the part of the plaintiffs, as well as on a cross bill and petition for declaratory judgment on the part of the defendants. The defendants have taken their appeal here from the decree of the Lamoille County Court of Chancery.

All parties are camp and property owners on or near Lake Elmore in the Town of Elmore, County of Lamoille, Vermont. The property owned by plaintiffs Edwards and Flory is on the east shore of Lake Elmore, and the property owned by plaintiffs Purvees is adjacent to the Edwards-Flory property on its north side and also runs to the water's edge of Lake Elmore. The property owned by the defendants Fugere is partially in back of the Purvee property and consists of two lots, one directly behind the other. There is a road, running north and south, between the property of the various plaintiffs and the two lots of the defendants, and the first lot of the defendants fronts on said road, with defendants' second lot being behind, and easterly of, the first lot. The property of the defendants is separated from the waters of Lake Elmore by the road previously described, as well as by the property of the Purvees and others.

The declaration of rights sought by the parties is as to the extent of a right of way claimed by the defendants over the properties of both plaintiffs, as well as the right to maintain a dock and boat landing at the point where the claimed right of way meets the waters of Lake Elmore.

The decree of the Chancellor gave the defendants a right of way across the south side of the lands of the Purvees and enjoined the defendants from enlarging or expanding or going upon the land situated immediately south of said twelve and one-half feet. Defendants were also granted the right to clear the right of way so declared to make it usable but were

enjoined from maintaining and locating a boat dock or boat landing upon the premises of the plaintiffs.

The defendants asserted in their pleadings and offered evidence that they also were entitled to an additional right of way of fifteen feet across the land owned by the plaintiffs Edwards and Flory, and they claim error in the order of the Chancellor enjoining them from using such claimed right of way, as well as the order of the Chancellor confining the right of way for any purpose other than access to the waters of Lake Elmore.

No exception has been briefed to the finding of the Chancellor that the defendants are entitled to the twelve and a half foot right of way across the south side of the lands of the Purvees, but the defendants take issue with the injunction as to the use of such right of way imposed by the Court of Chancery. The defendants are saying that they are entitled to an additional extension of fifteen feet of the right of way, situated to the south of the twelve and a half foot right of way, on the northerly part of the Edwards-Flory property.

It is our duty in an appeal from the judgment order and decree of the lower court to affirm the findings of such court, if there is any credible evidence to support them, and we must construe those findings so as to support the judgment, if possible. *Vermont Shopping Center, Inc.* v. *Pettengill,* 125 Vt. 145, 150, 211 A.2d 183 (1965).

Plaintiffs' and defendants' titles to their respective properties involved here are all derived from a common grantor named Nellie M. Hall. By deed dated August 24, 1921, Nellie M. Hall and her husband, Henry, conveyed to the predecessors in title of the property owned by plaintiffs Edwards and Flory with the following reservation:

> ". . . [T]he right of way across this lot for the benefit of campers that may build back of this lot. This right of way is to be across fifteen feet on the north side of this lot."

On September 23, 1921, Nellie M. Hall and her husband, Henry, conveyed to the predecessors in title of the plaintiffs Glennard and Lola H. Purvee, reserving:

". . . [R]ight-of-way across twelve and one-half feet on the south side of the lot for the use of campers that may build back of this lot."

The contention of the defendants is that they are entitled to the use of both rights of way, which, combined, would give a right of way of twenty-seven and a half feet because of the two different reservations made by Hall, as shown above.

Under the wording of the reservation retained by Hall to the predecessors in title of Glennard and Lola H. Purvee for the benefit of "campers that may build back of this lot", there can be no doubt that such reservation of a right of way does accrue to the benefit of the defendants, for their property is located directly in back of, or to the rear of the Purvee premises.

The question left to be answered is—does the reservations of a right of way to the predecessors in title of plaintiffs Edwards and Flory of fifteen feet also accrue to the benefit of the property of the defendants? It will be recalled that the reservation of the fifteen foot right of way was reserved by the grantor "for the benefit of campers that may build back of this lot." The lot referred to is that property now owned by Edwards and Flory. The finding of the Chancellor was that "Defendant's property is east and a considerable distance north of Edwards' and Flory's property and to the rear of it only in the sense it is east thereof." This finding is supported by the admitted exhibit of a map of the properties here involved.

The Chancellor, in effect, found that such fifteen foot right of way was not available for the use of the defendants for, in its decree, the court confined the defendants' right of way to twelve and one-half feet over the lands of Glennard and Lola H. Purvee. The defendants have briefed their contention of error to this part of the decree on the ground that although their property is not directly in back of the property of Edwards and Flory, it is "behind" such property in the sense that it is to the rear of it, although not directly in back of it.

Under the briefs of all parties on this question, we are presented with the duty of determining the meaning of the phrase used in the right of way reserved by the Halls to

Edwards and Flory "for the benefit of campers that may build back of this lot."

Both appellants and appellees agree that there seem to be no cases which have defined the words "back" or "back of". *Webster's Third New International Dictionary* defines "back of" as synonomous with "behind". Among other definitions given in *Webster's Third New International Dictionary* for "behind" is "used as a functional word to indicate anything that lies or intervenes between one thing and another."

In determining to what parties the right of way reserved by Hall over the north side of the Edwards-Flory lot accrues, we must first have in mind that both rights of way, reserved by Hall, were to allow access to the waters of Lake Elmore to campers that would, because of the location of their properties, otherwise have no means of getting to the Lake. Simply stated, such rights of way allowed the campers who benefitted thereby the right to cross the land of others that intervened between the land of the camper and the waters of the Lake.

In our opinion, the fact that Hall reserved one right of way in his deed to the predecessors in title of the Purvees and another right of way, upon a separate property in the deed of the Flory-Edwards property, is of great significance in settling this problem. The inescapable conclusion is that Hall, in each reservation, intended to reserve a right of way only to those campers who would build directly in back of, or to the immediate rear, over which one of the two properties upon which a right of way had been reserved. His use of the words "back of this lot" was functional, in that it reserved such right of way only to those campers whose access to the lake was denied by the particular lot that intervened between the camper and the lake. Had Hall the intention of creating one right of way for all campers who built east of the lake shore property then owned by him, it would have been easy for him to have so described such reservation, nor would he, had such been his intention, in a logical and common sense view of the matter, have created two rights of way. We find that the Chancellor was correct in his determination that the only right of way reserved for the use of these defendants was that one of twelve and a half feet over the Purvee property,

which property directly intervened between the defendants and the lake.

Our conclusion is bolstered by the fact there is no evidence of a "granting" deed relating to the 15-foot right of way traceable in the defendants' chain of title. The record before us is devoid of any evidence of the ownership of the property located behind the Edwards-Flory lot that would receive the benefit of the 15-foot right of way.

The second argument presented by the brief of the defendants is that the Chancellor was in error in enjoining them from locating and maintaining a so-called boat dock and/or boat landing upon the premises of the plaintiffs Purvee, at the termination of the right of way. The claim of the defendants to the right to build a boat landing or dock on the premises of the Purvees is based upon two deeds given by Henry Hall, as administrator of the Estate of Nellie M. Hall to predecessors in title of the defendants, dated January 22, 1926, and June 3, 1926, which granted "a right-of-way from the above lots to the lake shore and to maintain a boat and boat landing, said right of way to be through land previously reserved as a right-of-way; boat landing to be between lots now owned by Mark Cutting and Homer Edmuns (sic) Edmonds."

The above quotation clearly shows that the right of way here granted was over land previously reserved for that purpose. Such reservation in the deed of September 23, 1921, predated the reservation, granting the boat and dock rights in the deeds of 1926. The original reservation was only a "right-of-way across twelve and one-half feet on the south side of the lot for the use of campers that may build back of this lot." No reservation of riparian rights was made by Hall.

■ The grantor of defendants' predecessor in title could not create a greater reservation over the lands of the Purvees than had already been reserved by him when giving title. See *Vermont Shopping Center Inc.* v. *Pettengill, supra,* 125 Vt. at 149.

■ Hall, administrator, in his deeds of 1926, was seeking to extend the easement that he reserved over the servient estate of the lands of the Purvees.

"The principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon." *Dernier* v. *Rutland Ry. Light and Power Co.*, 94 Vt. 187, 194, 110 A. 4 (1920).

The defendants argue that since the reservation retained by Hall over the lands owned by the Purvees was in general terms, that it follows that such reservation was one of unlimited reasonable use and that boating and boating landings are easily reasonable uses for camp owners at Lake Elmore. In determining the extent and reasonableness of use of an easement claimed under a reservation concomitant circumstances which tend to show the intention of the parties may be considered, including the construction placed by the parties on the wording of the instrument. 25 Am.Jur.2d *Easements and Licenses* § 75, at 481.

Applying this principle, if Hall, in his original reservation of the right of way over the premises of the Purvees had intended that such reservation included the right to build a dock, or maintain a boat landing, we think it reasonable to conclude that he would not have attempted to establish such boating and docking rights by a later reservation. We find no error in the determination of the Chancellor that the easement of the defendants did not grant boat landing or docking rights on the right of way in question.

Although we have found that the determinations upon which the Chancellor entered his decree and judgment order were supported by the findings of fact, we find that such decree and judgment order were not drawn in accordance with that required by an action in Declaratory Judgments.

A "declaratory judgment" is one which simply declares the rights of the parties or expresses the opinion of the court on a question of law without ordering anything to be done, and the action is distinguished from other actions in, that it does not seek execution from the defendant or opposing party. 26 C.J.S. *Declaratory Judgments* § 1, at 50.

The decree below enjoins the defendants from performing various acts and such orders or injunctions go beyond

the jurisdiction of the court in a declaratory judgment action in merely declaring the rights of the parties or giving the opinion of the court on a matter of law.

*The decree below is reversed, because of a matter of form, and entry is: Cause is returned to the Lamoille County Court of Chancery for a new decree and judgment order, in accordance with the views expressed in this opinion.*