Charles W. **BADGER and Edith M. Badger**

v.

George H. **HILL.**

Supreme Judicial Court of Maine.

July 27, 1979.

Erwin, Austin & Lucas, P. A. by Ralph W. Austin (orally), James S. Erwin, York, for plaintiff.

Bruce A. Whitney, South Berwick (orally), Cole & Daughan by Francis P. Daughan, Wells, for defendant.

Before POMEROY, WERNICK, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Defendant George H. Hill is the owner of land situated in the Town of York, Maine, adjacent to the York River. Plaintiffs Charles W. Badger and Edith M. Badger have a right of way over defendant's land which affords plaintiffs access from land owned by them to the York River. Defendant has appealed from a judgment of the Superior Court (York County) (1) requiring defendant to dismantle a dock he had constructed on his land because, as found by the presiding Justice, it was so situated relative to plaintiffs' right of way as to interfere with a dock plaintiffs, in the full enjoyment of their right of way, might want to erect where the right of way meets the river; and (2) enjoining defendant from maintaining a dock that would impair the usefulness of any such dock plaintiffs would construct.

Defendant contends that the presiding Justice committed error in three particulars: (1) in admitting extrinsic evidence on the issue of the scope and purpose of plaintiffs' easement; (2) in ruling that it was within the scope of plaintiffs' easement interest that plaintiffs have a right to build a dock at the end of their right of way, where it meets the river; and (3) in concluding that plaintiffs should be given relief relative to defendant's existing dock, and enjoined as to his future conduct in maintaining a dock, on the ground that as presently situated, defendant's dock would interfere with any dock plaintiffs might want to construct where their right of way meets the York River.

We disagree with defendant's first and second contentions but find sufficient merit in his third claim of error to require that the case be remanded to the Superior Court. Accordingly, we sustain the appeal, set aside the judgment entered in favor of plaintiffs and remand the case for further proceedings in accordance with this opinion.

Plaintiffs' deed contains an express grant of "a pedestrian right of way or foot-path, being six (6) feet in width", over defendant's land "to the York River." Defendant's deed states that the land was conveyed to him

"[s]ubject . . . to a six foot pedestrian right of way or foot path adjoining the extreme high water mark of the York River . . . which right of way is for the benefit of owners lying southwesterly of said premises."

Defendant and plaintiffs trace their titles to a common owner, the Scotland Shores Corporation, which had sold off its York River property in four lots. One lot had been purchased by Verdi and Evelyn Leighton, who later conveyed it to plaintiffs. Another of the lots had been sold to John Goodwin, who in turn had conveyed it to River Wood Shores, Inc., and River Wood Shores then conveyed it to defendant Hill.

Plaintiffs instituted the instant civil action against defendant on April 27, 1977, seeking a preliminary and permanent injunction to prevent him from building a dock which, though it would not be an encroachment upon defendant's right of

way, would interfere, plaintiffs alleged, with a dock that they, in the exercise of rights conferred by their easement, might wish to build upon their right of way where it terminates at the river. On May 27, 1977 plaintiffs filed a supplemental complaint which asserted that defendant had already built the dock and asked that he be ordered to dismantle it. After a hearing, the Justice presiding in the Superior Court found that (1) defendant's dock was located three to five feet south of the edge of plaintiffs' right of way; and (2) although the dock was thus not an encroachment upon plaintiffs' right of way, it nevertheless was so situated that it would impair the effective use by plaintiffs of a dock that they might later want to construct where their right of way meets the river. On the basis of these findings the Justice ordered entry of the final judgment from which defendant has appealed.

 The scope of an interest in land conveyed by a deed is properly to be determined solely from the language of the conveyance, provided that the language has plain meaning. Where the language is ambiguous, resort may be had to evidence of extrinsic circumstances as an aid to interpretation. *See Gillespie v. Worcester*, Me., 322 A.2d 93, 95 (1974). Defendant contends that in all the deeds pertaining to plaintiffs' right of way the language used is plain in meaning, and therefore the presiding Justice committed error in admitting evidence of extrinsic circumstances and in relying on such circumstances to reach his ultimate determinations.

 We disagree with defendant. We conclude that the presiding Justice correctly viewed the language of the deeds as ambiguous in critical respects. True, the deeds plainly describe the width of the right of way as six feet, the mode of passage as "pedestrian" and the terminus of the right of way as the low water mark of the York River. Yet, the full scope of the use to be made of the right of way requires evaluation of the purpose it was to serve. As to this, the only plain indication in the deeds is that access was being provided to the York

River. The achieving of access to a river, however, is generally not the entire purpose for which a right of way providing such access is created. Also involved is why it was necessary, or desirable, to be able to reach the river. As to this aspect of purpose, the language of the deeds provides no answer. Thus, the language of the deeds may be unambiguous so far as it goes, but it does not go far enough in respects that are critical to the evaluation of the full scope, contemplated by the parties, of the use to be made of the right of way. In such context a court may properly resort to extrinsic evidence of purpose. As one scholar has observed:

"The extent to which circumstances need to be resorted to as an aid to the interpretation of language depends in part at least upon the completeness of expression contained in the language. The more complete the expression, the less resort there need be to the circumstances. As the language becomes less complete the greater becomes the need for resort to the circumstances under which it is used." 2 *American Law of Property* § 8.65 (A. J. Casner, ed. 1952).

Here, the presiding Justice carefully explained that he would admit extrinsic evidence to permit a thorough evaluation of the purpose, within the intendment of the persons who established the right of way, that was being served by affording access to the York River. Addressing counsel for the defendant, the Justice said:

"THE COURT: You think [the purpose was] clearly for foot access to the river. That may very well be the purpose, but it's not that clear and unambiguous from this language, is it? . . . It's quite obvious what was intended was a footpath, but the purpose for which that footpath is created, . . . the purpose of giving access to the channel in the York River doesn't appear at all within this deed."

In ruling as he did, the presiding Justice relied on the decisions in *Farnes v. Lane*, 281 Minn. 222, 161 N.W.2d 297 (1968) and *Hudson v. Lee*, Okl., 393 P.2d 515 (1964).

He correctly interpreted each of these cases as authorizing resort to extrinsic evidence to assist in the determination of the scope of an easement constituted by a right of way to a lake. Plainly, neither of these cases held that the fact alone that a right of way runs to a body of water *per se* establishes a right to construct and maintain a dock at the junction of the right of way and the water, and we reject defendant's contention that the presiding Justice gave the cases this erroneous interpretation. Rather, the presiding Justice correctly viewed the *Farnes* and *Hudson* decisions as holding only that, generally, access to a body of water is sought for particular purposes beyond merely reaching the water, and where such purposes are not plainly indicated, a court may resort to extrinsic evidence to assist the court in ascertaining what they may have been.[1]

Defendant erroneously relies on *Edwards v. Fugere,* 130 Vt. 157, 287 A.2d 582 (1972), another case involving a right of way to a lake. The actual decision in *Edwards* was that the extrinsic evidence adduced failed to support the claim that in creating the right of passage to the water, the parties contemplated a purpose for reaching the water that would justify a right to construct a dock. For present purposes, the significance of *Edwards* is not what the extrinsic evidence admitted may, or may not, have proved in that particular situation, but rather that the court unquestionably sustained the principle of resorting to extrinsic evidence to assist in the determination of the purpose for which access to a body of water was sought.

In the instant case, then, the presiding Justice did not err in admitting extrinsic evidence, and in relying on it, to assist him in discerning for what purposes the persons who created the right of way to the York River wanted such access to water.

As evidence in this regard, the presiding Justice heard the testimony of Verdi Leighton, the plaintiffs' predecessor in title. Leighton testified that Scotland Shores, Inc., defendant's predecessor in title, had granted Leighton and two others a right of way across defendant's land to the York River. He related that agents of the grantor Scotland Shores made a tour, together with the grantees, of the servient estate (now owned by defendant Hill). According to Leighton, this tour had a specific objective, which

> "was to determine exactly where that footpath right-of-way would end so that one of the three [grantees] or all three . . . could if they wished construct a pier at some point prior to the end of the right-of-way . . . ."

1. In support of his contention that extrinsic evidence was erroneously admitted and relied upon defendant cites *Kaler v. Beaman,* 49 Me. 207 (1860) and *Reed v. A. C. McLoon & Company,* Me., 311 A.2d 548 (1973). These cases are factually distinguishable.

In *Kaler* the defendant was expressly granted a "right of a free and open road . . . from the highway" to his parcel of land. The court held that this easement did not include the right to pile lumber on the sides of the road. Plainly, however, the purpose of this easement was to permit access to the dominant estate owner's land, and nothing more. In the case at bar, the right of way is not designed to permit plaintiffs to gain access to their land from the river, since they have alternative means of gaining access to their property. Here, the purpose of the right of way may be to permit swimming, boating, fishing, or some combination of these activities.

In *Reed v. McLoon, supra,* the defendant was granted an easement in gross which specifically granted him the right to use plaintiff's wharf; the right to keep a lobster car on the dock; the right to maintain a *gasoline* storage tank on the wharf, and to sell such gasoline; to lay all necessary pipelines; and to do "all things necessary to fulfill the foregoing purposes." The court stated that where the list of rights granted specified and delineated the scope of each right, except for the right to do "all things necessary" which referred back to the previously enumerated rights, the court would be governed by the principle of *ejusdem generis.* Thus, the court found that the right to maintain a gasoline storage tank on the wharf did not include the right to maintain a kerosene storage tank. In the case at bar there is no enumeration of the rights plaintiffs have once they travel on foot over the right of way to the river. Hence, the decision in *McLoon* is not on point here; the principle of *ejusdem generis* is inapplicable.

This testimony was sufficient to support the conclusion of the presiding Justice that plaintiffs' easement included not only the right to pass across defendant's land on foot to reach the York River but also the right to construct and maintain a dock from the end of the right of way into the river.

We turn, then, to the Justice's finding that the dock constructed by defendant Hill would interfere with any dock plaintiffs might later wish to construct. Paul Henry, a land surveyor and an engineer, personally examined the dock constructed by defendant. His testimony established that the dock was entirely on defendant's land and in no respect encroached upon or obstructed plaintiffs' right of passage. It was situated a few feet south of the southerly side line of plaintiffs' easement and extended from defendant's own property into the York River. According to Henry, if plaintiffs were to construct a dock, only three to five feet would separate such dock and defendant's dock. Henry further testified that because of the existence of defendant's dock plaintiffs would have difficulty mooring a vessel on that side of a dock they might build which was upstream, namely, within the three to five feet space separating the docks. On the basis of this evidence the presiding Justice found that defendant's dock would impair the effective use of a dock plaintiffs might wish to build in the full enjoyment of rights under their easement.

However, on the matter of whether the interference that would exist in fact would be an *unlawful* interference by defendant, we find the record before us unsatisfactory in two important respects. First, the record leaves unclear whether the interference complained of by plaintiffs, and found by the presiding Justice, would result *only* from that part of defendant's dock placed in the York River *outside the boundaries* of defendant's servient estate. In this regard, it is not readily apparent from the record whether defendant's servient estate extended to the low water mark of the York River or, rather, was limited to the high water mark and therefore did not include the tidal flats. *See Sinford v. Watts,* 123 Me. 230,

232, 122 A. 573, 574 (1923). Second, the record strongly suggests that the impairment to the effective use of a dock to be built by plaintiffs would occur *only* in regard to plaintiffs' use of *that part* of such a dock as would be in *the area between the low water mark of the river and its center line.* Were this truly the situation, the interference would be not only outside the geographical bounds of the servient estate but also *outside the bounds of plaintiffs' right of way,* which extended no farther into the river than its low water mark.

The owner of an estate that is servient to an easement may not make a use of the servient land which impairs effective use of the easement *within the bounds of the easement, see, e. g., Dana v. Smith,* 114 Me. 262, 95 A. 1034 (1915). This principle does not extend, however, to conduct by the owner of the servient estate which is otherwise lawful, especially if it occurs outside the bounds of the servient estate, that may interfere with activities of the holder of the easement conducted *outside the geographical bounds* of the easement interest. It does not constitute an exception to this basic principle which governs as to easements generally that the particular easement involved here is a right of way to provide access to a body of water running across riparian land. While defendant as the owner of riparian land may have common law rights, appurtenant to his ownership of such land, against interference with his access use of even that part of the York River between the low water mark and the center line of the river in front of the entire width of his riparian land, see *Whitmore v. Brown,* 102 Me. 47, 58, 61–62, 65 A. 516 (1906); *Proprietors of Maine Wharf v. Proprietors of Custom House Wharf,* 85 Me. 175, 178–79, 27 A. 93 (1892), one who has been granted only an easement interest over defendant's riparian land as a means of gaining access to the water does not thereby become entitled to exercise such riparian rights as are appurtenances of the servient riparian land. *Farnes v. Lane, supra; Thompson v. Enz,* 379 Mich. 667, 154 N.W.2d 473 (1967); see

*Bartlett v. Stalker Lake Sportsmen's Club,* 283 Minn. 393, 168 N.W. 356, 360 (1969); 4 Restatement of Torts 2d § 844, Comment (c); 1 Restatement of Property § 9, Comment (b).

We conclude, therefore, that while plaintiffs are entitled to build a dock on their right of way where it meets the York River, they are not entitled to an adjudication that defendant acts *unlawfully* by maintaining a dock, not an encroachment upon the geographical confines of plaintiffs' right of way, which *merely generally* would interfere with any dock that plaintiffs might build at the end of the right of way. It is further necessary that it plainly appear that the interference would be to the use of *that particular area, or part,* of any such dock of plaintiffs as is located *within the geographical bounds of plaintiffs' right of way,* not outside of them.

Since the record is unclear on these crucial points, we must sustain defendant's appeal, set aside the judgment in favor of plaintiffs and remand the case to the Superior Court for clarification of findings, or for additional findings, as to the exact geographical area where defendant's existing dock would interfere with any dock plaintiffs might build at the end of their right of way. After such clarification, or further findings, the Superior Court shall then make its ultimate determinations as to the unlawfulness of defendant's conduct in accordance with this opinion.

We note one additional point. If the presiding Justice should conclude, on remand, that defendant's dock interferes with the effective use of a dock that would be constructed by plaintiffs in respects that the Justice finds unlawful in accordance with the prescripts of this opinion, the Justice should evaluate whether it would be a sounder exercise of equity powers to invoke remedies less drastic than requiring defendant to dismantle his existing dock. Particular matters appearing in the record might suggest this to be a more appropriate approach. Neither in their complaint nor in their testimony did plaintiffs state that they had made a determination to build their own dock either in the immediate future or at some later time. Instead, plaintiff Edith Badger testified:

"Now, Mrs. Badger, you don't object to Mr. Hill's pier really, do you?

A. We asked Mr. Hill if he would be interested in sharing the dock. We had no objections to Mr. Hill having a pier. We felt everyone should have access to the water.

Q. So, you don't object to Mr. Hill having his pier?

A. No, we don't object to Mr. Hill having his—

MR. DAUGHAN: I have nothing further.

THE COURT: You may complete your answer. Go ahead.

A. We feel that we—everyone should be able to get to the water and we feel Mr. Hill has—we offered to share a dock with Mr. Hill so everyone could use the water, get to the water, and I don't object to sharing a dock with Mr. Hill, not at all."

The entry is:

Appeal sustained; judgment for plaintiff set aside; case remanded to the Superior Court for further proceedings in accordance with the opinion herein.

McKUSICK, C. J., and ARCHIBALD and DELAHANTY, JJ., did not sit.