**Lynn KLOTZ and Terri Klotz, Petitioners (Appellants–Defendants below)**

**v.**

**Owen HORN and Florence Horn, Respondents (Appellees–Plaintiffs below).**

No. 20S03–9008–CV–568.

Supreme Court of Indiana.

Aug. 30, 1990.

Ralph R. Huff, Jones, Huff & Palmer, Plymouth, for petitioners.

Stephen R. Snyder, Beckman, Lawson, Sandler, Snyder & Federoff, Syracuse, for respondents.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Third District Court of

Appeals. The issue presented is whether a conveyance of an easement appurtenant by warranty deed that expressly grants "access to Eagle Lake" contemplates the right of the easement holder to build, maintain and use a pier at the lake end of the easement on the servient parcel. The trial court below held that it did not and granted the servient owners' motion for summary judgment. The Court of Appeals affirmed. *Klotz v. Horn* (1989), Ind.App., 537 N.E.2d 509. For reasons set forth below, we now grant transfer and reverse.

The undisputed facts show that prior to June 23, 1975, appellees Owen Horn and Florence Horn owned a single tract of real estate in Kosciusko County that ran from the shore of Eagle Lake to Robinson Road. On June 23, 1975, the Horns conveyed to one Nedra J. Sainer the rear portion of said real estate which bordered on Robinson Road. In the written conveyance, the Horns reserved to themselves an easement for access to Robinson Road and granted to Sainer a six-foot wide easement appurtenant "for the purpose of access to Eagle Lake." Nearly ten years later, on June 19, 1985, Sainer conveyed her tract and easement to appellants Lynn Klotz and Terri Klotz. Thereafter, the Klotzes erected a pier at the lake end of their easement. The Horns demanded that the Klotzes remove the pier. The Klotzes refused, and the Horns filed a complaint for a permanent injunction, seeking to enjoin the Klotzes from placing a pier or any similar structure on the Horns' servient estate. Thereafter, the Horns filed a motion for summary judgment, seeking further to enjoin the Klotzes from parking a boat at the end of the access easement. The trial court granted the Horns' motion, finding:

> as a matter of law no riparian rights vest in the Defendants and they have no right to place a pier or boat at the end of the access easement. Plaintiffs are granted a permanent injunction against the Defendants prohibiting the placement of a pier or parking the boat at the end of said easement.

The Court of Appeals affirmed, holding as a matter of law that the Klotzes had no right to maintain a pier at the end of their access easement because no riparian rights were expressly granted to them in the warranty deed.

■ The issue presented here relates to lake access easements and riparian ownership. The Klotzes' main contention is the lake access easement that they bargained for is not worth much at all if they cannot enter onto the surface of the lake. The Klotzes submitted affidavits in opposition to the Horns' motion for summary judgment, in which they stated the following: at the lake end of the six (6) foot wide easement is a "sea wall" beyond which the bottom of the lake is very mucky and weedy and not desirable for purposes of wading or swimming without a pier which can be used to reach deeper water; moreover, fishing and boating are also extremely limited without a pier at the end of their easement. The Klotzes concede that they do not have riparian rights since their land is not bordered by water. Nevertheless, merely because they are not the riparian owners does not necessarily mean that they, as easement titleholders, cannot *use* the riparian rights of the servient tenant. *See Brown et al. v. Heidersbach et al.* (1977), 172 Ind.App. 434, 441 n. 5, 360 N.E.2d 614, 620 n. 5.

On facts nearly identical to the instant case, the Minnesota Supreme Court in *Farnes v. Lane* (1968), 281 Minn. 222, 161 N.W.2d 297, concisely identified this very issue, as follows:

> a finding that the defendants are not riparian owners does not settle the question of whether they are entitled to install and use a dock in the proper enjoyment of their easement for right-of-way purposes.

*Id.* at 227, 161 N.W.2d at 301. The issue is not whether the easement holder attains riparian ownership status, but rather, whether he is entitled to *use* the riparian rights of the servient tenant who has given him access to the body of water bordering the servient estate.

■ Dominant owners of lakeside easements may gain the rights to erect and maintain piers, moor boats and the like by

the express language of the creating instrument. *See, e.g., Maddox v. Katzman* (1982), Iowa App., 332 N.W.2d 347 (lot owners in platted subdivision given express right to construct private docks); *Strevell v. Mink* (1958), 6 A.D.2d 350, 176 N.Y.S.2d 901 (deed expressly provided for "a right of way ... 10 feet wide and also sufficient land on the shore of said lake for a boat house, and dock"), *aff'd* (1959), 6 N.Y.2d 850, 188 N.Y.S.2d 557, 160 N.E.2d 89. Indeed, one court has held that riparian rights cannot be conveyed to the proprietor of land not bordered by water even where the specific word "riparian" is used in the deed of conveyance, since riparian rights accrue only to land immediately upon a lake and not to any other land. *Schofield v. Dingman* (1933), 261 Mich. 611, 247 N.W. 67. The Court of Appeals below, relying on *Brown, supra,* held that the Klotzes could not construct, use and maintain a pier because no riparian rights were expressly given in the grant. However, this should not be the focus of our inquiry. The issue is not whether the Horns intended to convey away the whole of their riparian rights, but rather what the Horns and Sainer contemplated when they created this easement appurtenant "for the purpose of access to Eagle Lake."

■ On facts nearly identical to the instant case, the Supreme Judicial Court of Maine stated:

> generally, access to a body of water is sought for particular purposes beyond merely reaching the water, and where such purposes are not plainly indicated, a court may resort to extrinsic evidence to assist the court in ascertaining what they may have been. [Footnote omitted.]

*Badger v. Hill* (1979), Me., 404 A.2d 222, 226 (citing *Farnes, supra,* and *Hudson v. Lee* (1964), Okla., 393 P.2d 515). The plaintiff's deed in *Badger* granted him "a pedestrian right of way or foot-path, being six (6) feet in width" over the defendant's land "to the York river." *Id.* We find the phrase "access to Eagle Lake" to be ambiguous and hold the trial court erred in granting the servient tenant's motion for summary judgment based on the fact that the dominant tenants did not acquire the status of riparian owners. On remand, the trial court should allow extrinsic or parol evidence to ascertain the intent of the parties who created the easement, the Horns and Sainer, taking into consideration all of the surrounding circumstances. *But cf. Lakeside Launches v. Austin Yacht Club* (1988), Tex.App., 750 S.W.2d 868 ("easement and right-of-way" not ambiguous, no parol evidence allowed; easement holder not allowed to float a commercial boat dock where easement created for ingress and egress only). As stated, the Horns originally conveyed this easement appurtenant to Sainer, who in turn conveyed it to the Klotzes. Since the warranty deed from the Horns to Sainer expressly granted an easement appurtenant, it was attached to the land, passed with the land when it was conveyed to the Klotzes, and was not personal to Sainer. Sainer could only convey to the Klotzes what rights she had in the property and the easement appurtenant thereto. Therefore, the relevant inquiry on remand should be the intent of the Horns and Sainer when the easement was created.

The Court of Appeals below based its decision to a great extent on *Brown, supra,* which held that a deed granting an access easement across the original plat of Kopekanee Beach at Lake George, Indiana, did not convey riparian rights. *Brown,* however, is distinguishable on its facts alone, as it involved a number of platted lots in a residential development which was bordered by a roadway. The easement which ran to the shore of Lake George was on the other side of this roadway, was twenty (20) feet wide, and was for the benefit of all lot owners in the lakeside development. Suit was brought by certain dominant owners who held title to several of the platted lots and enjoyed an easement to the lake against the Browns, who had platted additional property and gave the titleholders of these additional lots the use of the same easement. The dominant lot owners sought an exclusive use of the easement and damages. The trial court rendered a judgment for the lot owners, but the Court of Appeals reversed, addressing for the first time the issue of whether

riparian rights inure to the dominant estate of a lakeside easement in Indiana. The *Brown* court concluded that, by the express terms of the grants creating the easement, no riparian rights were intended to be conveyed. *Brown*, 172 Ind.App. at 441, 360 N.E.2d at 619–20. Those grants included the terms "[r]ight of way to the lake" and "an easement to the shore of Lake George, over the east twenty (20) feet of ... Kopekanee Beach, which easement is to be used in common with other lot owners." *Id.* at 435–36, 360 N.E.2d at 616. The facts of the instant case are distinguishable from those in *Brown*. From our reading of *Brown*, it appears from the name of the lakeside development, "Kopekanee Beach," that a beach was available to the families who lived in the development next to Lake George. No such beach exists in the instant case. Indeed, according to the Klotzes' affidavits submitted in opposition to the Horns' motion for summary judgment, the bottom of Eagle Lake at the end of their easement is very mucky and weedy and not suitable for wading, swimming, fishing or boating. In any event, even if there was no beach in *Brown*, there was no allegation that the easement holders could not enjoy their easement to Lake George without a dock or pier. Installation of a pier, while not necessary for the enjoyment of the plaintiffs' lakeside easement in *Brown*, seems more than reasonable based on the record before us in the instant case, as it would certainly facilitate the Klotzes' access to Eagle Lake. *See, e.g., Cabal v. Kent County Road Comm'n* (1976), 72 Mich.App. 532, 250 N.W.2d 121 (dock held to be "reasonably appurtenant" to lakeside easement). *But cf. Edwards v. Fugere* (1972), 130 Vt. 157, 287 A.2d 582 (building of dock not allowed), *overruled on other grounds by Graves v. Waitsfield* (1972), 130 Vt. 292, 292 A.2d 247.

The *Brown* court examined the facts and circumstances surrounding the creation of the easements at issue, and stated the following:

An instrument creating an easement must be construed according to the intention of the parties, as ascertained from all facts and circumstances, and from examination of all its material parts. *Cleveland, etc., R. Co. v. Griswold* (1912), 51 Ind.App. 497, 97 N.E. 1030. To conclude that the Smiths and Heidersbachs [owners of the lakeside easement] were granted riparian rights (the right to dock boats at a pier attached to the access easement) under the terms of the grant would be to severely limit Browns' riparian rights as owners of the fee.

*Brown*, 172 Ind.App. at 441, 360 N.E.2d at 620. In a footnote immediately following this passage, the *Brown* court noted:

When expressly given in a grant, this does not, necessarily prevent the *use* of riparian rights by an easement titleholder.

*Id.* at 441 n. 5, 360 N.E.2d at 620 n. 5 (emphasis in original).

The Court of Appeals in *Brown* held the language "access to the lake" to be sufficiently ambiguous to inquire into the surrounding facts and circumstances. Allowing the two dominant owners in *Brown* to erect a pier for their exclusive use at the end of an easement twenty feet wide would have greatly diminished the value of the easement to the rest of the subdivision and made the new lots much less attractive and, thus, of less value to the servient owner. In the instant case, however, nearly identical language in the granting instrument did not lead to a similar inquiry by the trial court below. The rule employed by the Court of Appeals in *Brown* which should have been employed in the instant case is not that a dominant landowner can never acquire the right to use the riparian rights of the servient landowner through a lake access easement, but rather that there must be an inquiry into the surrounding facts and circumstances to determine the intent of the Horns and Sainer, the parties who created the easement. The *Brown* court put it this way:

Usually, easements arise to fill some need or serve some purpose. That purpose, whether expressed in the grant, implied, or acquired through prescription, is the focal point in the relationship which exists between the titleholders of the dominant and servient estates. The

servient estate is burdened to the extent necessary to accomplish the end for which the dominant estate was created. The titleholder of the dominant estate cannot subject the servient estate to extra burdens, *New York Cent. R. Co. v. Yarian* (1942), 219 Ind. 477, 39 N.E.2d 604, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. *Smith v. Holloway* (1890), 124 Ind. 329, 24 N.E. 886.

*Id.* 172 Ind.App. at 438, 360 N.E.2d at 618. In the instant case, the trial court should likewise hear evidence to determine the intent of the parties who created the easement and then balance the interests of the present titleholders of the dominant and servient estates.

Accordingly, we now grant transfer. The Court of Appeals opinion reported at 537 N.E.2d 509 is hereby vacated, the summary judgment entered by the trial court in favor of the Horns and against the Klotzes is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., GIVAN and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

Though recognizing that the majority position finds much in its support, I must respectfully dissent.

The attachment of a boat dock to the bank of a lake requires a construction on and alteration of the bank. At the place of attachment, a dock severely restricts the use of a significant segment of the bank. Here, for example the lot owners could not use the segment of the bank occupied by this proposed dock and its moorings to enter or leave the lake or to tie up a boat of their own, and they could not use the dock because it does not belong to them. Nothing could be plainer. Moreover, the easement involved in this case is only six feet wide. This clearly shows that it is not intended for use by cars or the transportation of large watercraft. It is not intended to be used for the storage of docks, dock parts, or equipment commonly accompanying the enjoyment and maintenance of docks. It is instead a sylvan foot path, intended for the transportation of no more than what a person or two might carry and to facilitate the simplest of lakeside pleasures.

I would affirm the summary judgment of the trial court that the right of access to a lake over a six-foot wide path does not carry with it the right to construct and attach a boat dock where the path meets the water.