# PAT HUMMEL et al. v. STATE.

No. A-9607.   Feb. 23, 1940.
(99 P. 2d 913.)

W. W. Miller, of Tahlequah, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. Pat Hummel and Roy Hyatt were jointly charged and tried in the county court of Cherokee county of the crime of malicious mischief. The jury returned a five juror verdict finding them guilty, but failed to agree upon the punishment. A new trial having been denied, they by the judgment of the court were each sentenced to pay a fine of $50.

To reverse the judgment they appeal.

The errors assigned are substantially as follows: The verdict is not sustained by and is contrary to the evidence and the law applicable thereto, and the court erred in overruling the demurrer to the evidence, and in refusing to instruct the jury to return a verdict of not guilty; that the court erred in refusing to give requested instruction and erred in giving certain instructions.

The information charges that Pat Hummel and Roy Hyatt did in Cherokee county on or about the 22nd day of April, 1938, while acting together and in concert with each other, willfully, unlawfully and maliciously injure, deface and destroy certain personal property, to wit: One red bull, 2 years old, branded LL on left hip, same being the property of one Levi Latty, by then and there castrating said bull.

40

The evidence is to the effect that the prosecuting witness, owner of the bull in question, permitted the animal to run at large on a free range, where the defendants had a herd of white-faced thoroughbred cows. He testified that he did not know it was unlawful to permit his bull to run at large on the range; that his bull was castrated without his consent, but it finally got all right.

The two other witnesses for the state testified that they saw the defendants on horseback, driving the bull away from the defendant's thoroughbred cows, and they passed out of sight behind a hill; shortly after they heard a bull bawl.

When the state rested the defendants demurred to the evidence, and moved the court to direct a verdict of acquittal. Overruled. Exceptions reserved.

The defendants did not offer any testimony.

In answer to plaintiffs in error's brief, the Attorney General has filed the following confession of error:

"An analysis of the record discloses that these appellants, the defendants below, who will hereinafter be referred to as the defendants, owned a nice, fine herd of white-faced cattle, and thoroughbred white-faced bulls, some of which cost as much as $300. The prosecuting witness owned a mixed herd of cattle and a three-quarters red brindle bull. All of these cattle were in open range territory, and the defendants turned their bulls loose in the spring and took them up in the fall, and gave all cattle owners the privilege of service of the thoroughbred bull. These defendants were seen driving the bull of the complaining witness toward their house and there was later a noise, to wit, a bull bawling, coming from that direction; and the next day the scrub bull showed up castrated. There are strong inferential circumstances and circumstantial evidence that said bull was castrated by these defendants. The record does not disclose any malice on the part of these defendants toward Mr. Latty personally; one

of the defendants scarcely knew him, and there had never been any personal controversy or real feelings of any kind such as ordinarily precede and accompany a malicious act. Hence, we would say from our analysis that there is no malice shown.

"In this connection, we invite the court's attention to section 9044, Okla. Stats. 1931, 4 Okla. St. Ann. § 96, which reads as follows:

" 'From and after the passage and approval of this act, it shall be unlawful for any owner of livestock in this state, to permit any male swine over the age of four (4) months, or any bull over the age of nine (9) months to run at large within any portion of this state where cattle and swine are permitted by law to run at large, unless the animals or animal be pure or standard bred.'

"Thus, we need only read this statute and take a squint at the record at page 32 of the case-made, wherein Mr. Latty testified as follows referring to his bull:

" 'Q. Was he a thoroughbred? A. No, sir. Q. What was he, just a red bull? A. Well, he was a Poland bull, or Durham, you might say, he was just a three-quarters bull.' to see that he was clearly violating the above-quoted section. In this connection, we are not experts, but believe our court would take judicial knowledge of the fact that a handsome steer, that is, a bull that had lost his social standing in the community in which he resided, is worth more on the market at any packing house in the country than a bull of the type owned by Mr. Latty, to wit, a scrub.

"We join with the counsel for defendants in his brief under the case of Colbert v. State, 7 Okla. Cr. 401, 124 P. 78, that this was a private nuisance, and that consistent with good judgment and without disturbing the peace, these defendants had a right to abate this nuisance. That if the complaining witness was damaged by the acts of these defendants, it is a question for settlement in the civil courts.

"It will be noted that thoroughbred bulls have the edge over the scrubs under the law; and we know of no

finer method to improve the type and kind of cattle and livestock generally. The Attorney General would never desire to work a hardship on that class of citizens who are earnestly endeavoring, as disclosed from this record, to improve the type and kind of cattle in Oklahoma. On the other hand, would lend every encouragement to the elimination of scrubs, to the extent that some day we might indulge in the fond hope that none but thoroughbreds will roam the plains of this great Sooner State.

"The Attorney General, therefore, confesses that these defendants are not to be convicted, and concurs in the plea of the defendants as expressed in their brief herein, that said cause should be reversed."

This prosecution is based upon Penal Code, sec. 2333, 21 Okla. St. Ann. § 1760, which reads:

"Every person who maliciously injures, defaces or destroys any real or personal property not his own, in cases other than such as are specified in the following sections, is guilty of a misdemeanor, and in addition to the punishment prescribed therefor, he is liable in treble damages for the injury done, to be recovered in a civil action by the owner of such property or public officer having charge thereof."

In the case cited in the foregoing confession of error, Colbert v. State, 7 Okla. Cr. 401, 124 P. 78, 79, this court said:

"In prosecutions for malicious mischief, malice toward the owner of the property injured is the gravamen of the offense, without which it would be a mere trespass. 2 Wharton's Cr. Law, 1070; 2 Bishop's New Cr. Law, § 996; Desty's Cr. Law, 144c. The intent with which an act is done is material, and, if it be shown that the defendant acted in good faith or under a claim of right, the charge of malicious mischief cannot be sustained, and any evidence tending to rebut the charge of malice or going to show the animus of the defendant is admissible. * * *

"It has been repeatedly decided that in cases of malicious mischief the spirit in which the act was done must

be toward the owner of the property, and not against the property itself. * * *

"The right of a person injured by a private nuisance to summarily abate such nuisance is clearly stated in 29 Cyc. p. 1214, as follows:

" 'Private Nuisance. It is well established that a person who is aggrieved by a private nuisance has the right to abate the same by his own act, upon his own motion, without instituting any legal proceedings. So the person aggrieved may kill a dog which haunts his premises, and by barking and howling becomes a nuisance, cut off branches of a neighbor's trees overhanging his land, remove a part of an adjoining owner's wall which overhangs his premises, or cut off the eaves of a building overhanging his property.' * * *

"A party aggrieved by a private nuisance may have his action for damages or he may summarily abate the nuisance. Harvey v. Dewoody, 18 Ark. 252.

"The Supreme Court of Iowa has decided that a person may abate a private nuisance by his own act when it appears that such nuisance is injurious to such person or his property at the time of such abatement. Moffett v. Brewer (Iowa) 1 G. Green 348."

In the case at bar the evidence for the state established the fact that the prosecuting witness, owner of a mongrel bull, permitted the animal to run at large on the open range of a stock district, where cattle are permitted to run at large, and where the defendants had a herd of standard bred cows, in violation of the statute, sec. 9044, supra, 4 Okla. St. Ann. § 96.

The term "nuisance" signifies in law such a use of property or such a course of conduct, irrespective of actual trespass against others, or of malicious or actual criminal intent, which transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would

otherwise be rightful freedom. It is a class of wrongs which arises from an unreasonable, unwarranted, or unlawful use by a person of his own property, working an obstruction or injury to the right of another, or to the public, and producing such material annoyance, inconvenience, and discomfort that the law will presume a resulting damage. 46 C. J. 645, and cases cited. City of Phoenix v. Johnson, 51 Ariz. 115, 75 P. 2d 30.

The statutory definition is:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or,

"Second. * * *

"Third. * * *

"Fourth. In any way renders other persons insecure in life, or in the use of property." Section 11489, Sts. 1931, 50 Okla. St. Ann. § 1.

Under the statute:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." Section 11490, 50 Okla. St. Ann. § 2.

"Every nuisance not included in the definition of the last section is private." Section 11491, 50 Okla. St. Ann. § 3.

Section 11501, 50 Okla. St. Ann. § 13, provides:
"The remedies against a private nuisance are:
"First [1], A civil action; or,
"Second [2], Abatement."
Section 11502, 50 Okla. St. Ann. § 14, provides:

"A person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which

constitutes the nuisance, without committing a breach of the peace or doing unnecessary injury."

The right of summary abatement of nuisances without judicial process or proceeding was an established principle of the common law, and it has not been regarded as being abrogated by the provisions of Constitutions for the protection of life, liberty, and property, although the exercise of the right might result in a destruction of property.

A private nuisance may be summarily abated only by the party aggrieved, who may always resort to this summary method of redress whenever he has been injured to such an extent as to give him a right of action. 46 C. J. 755 and cases cited.

In 20 Ruling Case Law, sec. 102, it is said:

"There seems to be no doubt but what a person who suffers injury from a private nuisance may abate it without resort to legal proceedings, provided he can do so without bringing about a breach of the peace. The fundamental principle is one that applies to a variety of situations. The law adopts the natural right of self-defense, because it considers the future process of law an inadequate remedy for present injuries accompanied with force. It adopts the natural right of recapturing property, real and personal, by the mere act of the party injured, because legal process may be an inadequate remedy. It adopts the natural right of abating nuisances by the mere act of the party injured, because he cannot reasonably be required to wait for the slow progress of the ordinary forms of justice."

In the case of Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 880, 7 L. R. A. 134, 16 Am. St. Rep. 813, the court said:

"But the remedy by judicial prosecution, in rem or in personam, is not, we conceive, exclusive, where the statute in a particular case gives a remedy by summary abatement, and the remedy is appropriate to the object to be accomplished."

46

At common law a private individual could abate a nuisance which worked a special injury or hurt to him, and could enter upon the lands or premises of another for such purpose, provided he could do so in a peaceable manner. Joyce on the Law of Nuisance, § 368.

The following statements of the law are found in Corpus Juris:

"Since malice is an essential of malicious mischief, acts done under a legal right, or in good faith and under a reasonable claim of right, such as is known to the law, do not constitute malicious mischief, where not forbidden by statute. * * *

"The defense of good faith and claim of right apply to acts done in the protection of a legal right, in the protection of the possession of property, or in the protection of the property itself. But one is liable if he does more damage, or uses greater violence, than it could be properly supposed was necessary for the assertion of the right or its protection. A person is not liable for malicious mischief in abating a public nuisance by which he is aggrieved, where he does so without a breach of the peace, and causes no more damage than is necessary to the assertion of his right." 38 C. J. 366.

In Schtul v. People, 96 Colo. 217, 40 P. 2d 970, 972, the Supreme Court of Colorado held:

"The mere intentional doing of an act prohibited by statute, or omitting the performance of a statutory duty, does not alone constitute malicious mischief, though it may damage the property of another. The malicious mischief statute is criminal, and it is not its province to make simply the intentional doing of an unlawful act, which injures another's property, a crime independent of any evil purpose or intention."

In the case of Thissen v. State, 21 Okla. Cr. 437, 209 P. 224, 226, the court said:

"While there is a considerable conflict of opinion as to whether in prosecutions for malicious mischief against the property of another a malicious intent to injure the owner of the property is a necessary ingredient of the offense, it seems to be the general rule, however, that as to malicious injuries to animals an intent to injure the owner is a necessary ingredient. These holdings were perhaps the outgrowth of the very general statutes of the states directed against cruelty to animals—the courts almost universally holding that in prosecutions under such statutes malice toward the owner of the animal is not essential to be proved. Such a statute is section 2746, Revised Laws 1910 (sec. 1844, Sts. 1931, 21 Okla. St. Ann. § 1685). Our statutes were taken from Dakota. In the case of State v. Minor, 17 N. D. 454, 117 N. W. 528, 19 L. R. A. (N. S.) 273, the Supreme Court of North Dakota, construing a statute identical with section 2765, supra (sec. 2333, Sts. 1931, 21 Okla. St. Ann. § 1760), held:

" 'The word "maliciously," as used in section 9315, Rev. Codes 1905, relating to the crime of "malicious mischief," is to be given a restricted meaning, and imports that the act to which it relates must have resulted from actual ill will or revenge. It implies an intent to vex and annoy the owner of the property injured.' * * *

"Section 2822, Revised Laws 1910 (sec. 1782, Sts. 1931, 21 Okla. St. Ann. § 95), defines the term 'malice' and 'maliciously' to 'import a wish to vex, annoy, or injure another person, established either by proof or presumption of law.'

"While under our statutes it would probably not be necessary for the state to establish actual or express malice toward the owner of the property, it is essential, we believe, in prosecutions under section 2765 (sec. 2333, Stat. 1931, 21 Okla. St. Ann. § 1760) (especially is this true where the property injured or killed is a domestic animal) to establish such a degree of malice against the owner, whoever he might be, which the law would deem sufficient to be inferred from the nature of the act itself and from the circumstances which accompany and characterize it."

Under the provisions of the statute, section 11502, supra, 50 Okla. St. Ann. § 14, and the facts and circumstances in evidence, the right of summary abatement of the nuisance maintained by the prosecuting witness was clearly established.

The defendants' conduct, in so far as the evidence discloses, was entirely consistent with the utmost good faith on their part in the protection of their property and of a legal right. They did nothing from which it can reasonably be inferred that they intended to do wrong, or to do anything except what they believed they had a legal right to do. They acted openly and not secretly, and there is nothing in the record showing or tending to show that their purpose was to vex or annoy the prosecuting witness, and it does not appear they committed a breach of the peace or the doing of unnecessary injury, or that they were actuated by a desire to injure the prosecuting witness in his property rights by summarily abating the nuisance by the act charged.

Upon a consideration of the record and the evidence in the case we are of the opinion that the state wholly failed to establish the commission of the offense charged, and for that reason the defendants' motion for a directed verdict should have been sustained.

We therefore conclude that the judgment appealed from must be reversed. It is so ordered.

BAREFOOT and JONES, JJ., concur.