## WILBUR J. HOLLEMAN v. CITY OF TULSA.

No. A-10334.   Jan. 17, 1945.

(155 P. 2d 254.)

Walter L. Kimmel and Floyd E. Whitlatch, both of Tulsa, for plaintiff in error.

E. M. Gallaher, City Atty., C. Lawrence Elder, Philip J. Kramer, and L. A. Justus, all of Tulsa, for defendant in error.

BAREFOOT, P. J.  Defendant, Wilbur J. Holleman, was charged in the municipal criminal court of the city of Tulsa with the crime of malicious mischief; was tried be-

fore the court without the intervention of a jury; was convicted and sentenced to pay a fine of $18 and $2 costs. From such judgment and sentence he has appealed to this court.

The ordinance under which defendant was charged is as follows:

"Malicious mischief is hereby defined as an injury or destruction done to the property of another person and prompted by malice or hatred toward another or an injury or destruction done to the property of another in a wanton and malicious manner. Malicious mischief is hereby declared to be an offense."

Defendant, for the first time on appeal, urges that the information filed in this case is insufficient, for the reason that it is alleged: " . . . in wanton, *or* malicious manner", instead of " . . . in wanton *and* malicious manner."

The defendant entered his plea of not guilty at the time of trial. He did not file a demurrer to the information, and this question was not raised in the motion for new trial. It is first assigned as error on appeal.

When the city introduced its first witness, counsel for defendant objected to the introduction of any evidence, for the reason that the information was not properly verified. This was overruled, and no question as to the sufficiency of the information was raised.

It has often been held by this court that it is necessary to demur to, or file a motion to quash the information in order to attack the same. Willis v. State, 64 Okla. Cr. 213, 78 P. 2d 840, and Clasby v. State, 78 Okla. Cr. 45, 143 P. 2d 430, and cases cited therein.

It is next contended that the court erred in refusing to sustain the demurrer or motion for judgment at the close of the case; and in not discharging the defendant.

This contention necessitates a brief statement of the facts upon which this conviction is based.

Defendant is an attorney in the city of Tulsa. He owned a home, in which he was residing with his family, in that city. His home was located in a residential section of that city which had been designated by city ordinance as a U-1 district. That portion of the ordinance defining the uses to which dwellings located in a Class U-1 district might be put is as follows:

"Class U-1 Uses: (1) Dwelling. . . .

"Sec. 4. Residence Districts. (a) Dwelling. In a class U-1 district no building or premises shall be used, and no building shall be erected, which is arranged, intended or designed to be used for a Class U-2, Class U-3, Class U-4, or Class U-5 use, except as herein otherwise provided.

"Section 5. Accessory Uses in Residence Districts. An accessory use customarily incident to a Class U-1 or Class U-2 use shall be permitted in, respectively, a Class U-1 district. . . ." A bill-board, sign-board, advertising sign, or window display shall in no case be permitted as an accessory use. . . . In a dwelling or apartment occupied as a private residence, one or more rooms may be rented, or table board be furnished, provided no window display or sign board is used to advertise such use.

"Sec. 32. Penalty. Any person, firm or corporation violating any provision of this chapter shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than $25.00 and not more than $100.00 for each offense, and each day's violation thereof shall be deemed a separate offense."

The prosecuting witness, May Eversole, occupied a home owned by her sister, Adda Eversole, across the street from the home of the defendant, and in the same district. She rented rooms and served meals in her home, chiefly to servicemen and their wives. Prior to the charge in this

case she displayed a small sign, placed on a post of her porch, which read: "Rooms meals." Defendant, on July 24, 1942, left his home, having with him his six-year-old son, crossed the street, went upon the premises of the prosecuting witness, tore down the sign, and tore it into pieces. When asked by the sister of prosecuting witness, who was the owner of the premises, why he did not come and talk with them about the sign, he replied that he did not have to talk with her about it, and stated that he tore the sign down and that if she put up another, he would tear it down. She testified that the defendant talked in a loud voice, such as to be heard by the neighbors, and that he shook his fist. He also spoke of its being in a prohibited district.

As to the tearing down of the sign, the testimony of the defendant, of the prosecuting witness, and her sister, Adda Eversole, is practically the same.

It is the defendant's contention that his acts did not justify the filing of a charge of "malicious mischief" under the ordinance above quoted. That he did not act with malice. That he did not even know the prosecuting witness prior to tearing down the sign. That the displaying of the sign was a violation of the law under the ordinances of the city of Tulsa. That the police officers had been notified of the existence of the sign, and had failed to take any action toward removing the same, or prosecuting the witness May Eversole for a violation of the ordinance, and that he as a private citizen had the right to tear it down. He claims that it was a private nuisance and that he had the right to personally abate the same.

With reference to the abatement of a private nuisance, counsel cites 50 O. S. A. 1941 §§ 13, 14, and 15, which are as follows:

"§ 13.  The remedies against a private nuisance are:

"1, A civil action; or,

"2, Abatement."

"§ 14.  A person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which constitutes the nuisance, without committing a breach of the peace or doing unnecessary injury."

"§ 15.  Where a private nuisance results from a mere omission of the wrongdoer, and cannot be abated without entering upon his land, reasonable notice must be given to him before entering to abate it."

Attention is called to the case of Hummel v. State, 69 Okla. Cr. 38, 99 P. 2d 913, where this court had under consideration the question of the owner of a red bull allowing it to run upon the open range in violation of a state law.  In that case, certain citizens finding themselves aggrieved by reason of the animal mixing with their blooded stock, proceeded to castrate the bull, and we held that they could not be convicted under the state "malicious mischief" statute.  This case came under a direct and specific statute, 4 O. S. 1941 § 96, making it unlawful for the owner of certain livestock to permit the same to run at large in this state.

Defendant bases his main contention upon the ground that the act of the prosecuting witness in placing the sign upon the porch created a nuisance, and that it was a direct violation of an ordinance of the city of Tulsa, and, as a private citizen, he had the right to abate the same by tearing it down and destroying it.

We have read many cases bearing upon the right of a private citizen to abate a nuisance.  A full discussion is given in 46 C. J. 755 et seq.  We shall not quote the text. It deals mostly with the action of a court of equity, and

has reference to civil procedure. The right of an individual to abate a nuisance is recognized, but a careful reading of the entire text reveals that distinctions are made even by a court of equity, and that such courts will take into consideration the nature of the nuisance to be abated, its direct or harmful results to the party, and whether the nuisance may be abated without a trespass upon the land or premises of another.

This distinction was clearly drawn in the case of Hummel v. State, supra. There an injury was being inflicted that was irreparable, and demanded immediate action, and did not necessitate the entering upon the premises of another. It was recognized as a damage to the property, as distinguished from a damage to the person.

It is generally recognized by all the authorities that notice shall be given before the abatement of a nuisance where it is necessary to enter upon the property of another to abate the same. The statute above quoted, 50 O. S. 1941 § 15, provides that "reasonable notice must be given to him before entering to abate it."

The fact that the defendant is an attorney at law does not affect the merits of this case, except that it may be assumed that he knew the law and should have respected the same. We are justified in finding from the record that the prosecuting witness did not know of the existence of the city ordinance; that she had no notice from the city authorities to remove the sign and that the defendant had made no such request of her before summarily removing the same, tearing it into pieces, and informing her that he had a right to do so, and that he would tear up any other sign she might place there in the future.

Defendant insists that he did not act with malice, and for this reason the charge against him could not stand.

We have examined a number of authorities and it is generally held that malice may be inferred from the conduct of the party. It is generally held that this is a question of fact for the jury, and the court should instruct the jury as to this issue. In the instant case, defendant was tried before the court without a jury. Therefore, no instructions were given. Under these facts, the presumption is that the court considered the law as applicable to the facts in a proper manner. At the time the court pronounced judgment and sentence, he said:

"There is no doubt about it at all—Miss Eversole was committing a misdemeanor by having the sign up there, but there was a remedy at law, and the defendant, being a lawyer, well knew, better than any other class of people—he would know. He failed, neglected and refused to avail himself of the legal process which he was entitled to use to have that sign removed.

"Among other principles of law, there is one very basic one, that I hope will never be abated in this country, and that is, you don't dare to use more force in the defense of yourself and your property than is necessary, and you must not use that force yourself when you can summon the law to do that for you.

"There is not a scintilla of evidence here to show that the defendant at bar ever went over to the place where this sign was and talked to anybody at the place. There is not a scintilla of evidence before me to show he ever came to court and filed any kind of instrument to enforce this law which he says and alleges Miss Eversole violated by having this sign up, and bringing the matter to issue before the proper tribunal here in a pacific manner and let it be decided according to law, as to what should be done about that matter.

"I am very sorry that these matters have to come up. I cannot understand, exactly, how these intelligent people would ever have such a misunderstanding as that. Both

of these parties I consider very high grade people. I am sorry that these things do come up, but where the evidence shows it, I cannot do anything else. I find the defendant guilty of the charge and assess a fine of $18 and costs."

In the case of Commonwealth v. Byard, 200 Mass. 175, 86 N. E. 285, 287, 20 L. R. A., N. S., 814, it is said:

"We are of opinion that a manifestly injurious act, done willfully in reckless disregard of the rights of others, is done wantonly within the meaning of the statute. National Folding Box [& Paper] Co. v. Robertson's Estate, C. C., 125 F. [524], 525; Werner v. State, 93 Wis. 266, 67 N. W. 417; 30 Am. & Eng. Encl. of Law (2d Ed.) 2-4. The jury were further instructed that if the defendant, acting as a reasonable man, was justified in believing and honestly believed that he had the authority that he exercised, he was not guilty; but if they found that if he had taken any proper precaution to learn of his rights and duties as tree warden he would not have acted as he did, and found that he was grossly negligent in the performance of his duties as tree warden, they might find that he acted wantonly. Willfully to do an irreparably injurious act without trying to ascertain what his rights and duties were, and to go on in gross negligence of his duties, indicated a spirit of wantonness and reckless disregard of right and wrong in his conduct affecting others. We are of opinion that the instructions on this branch of the case were substantially correct, and that the defendant's requests were rightly refused."

See, also, the case of Lewis v. State, 55 Okla. Cr. 182, 27 P. 2d 363.

We have carefully examined the record in this case, and the law as applicable thereto. Cases may be cited upholding the contention of the defendant, and also that of the city. We have reached the conclusion, however, that it would be unwise for this court to establish the principle that one has the right to take the law into his own hands

as the facts in this case reveal, and thereby attempt to enforce the law himself, without having appealed to the officers to enforce the same, or without having given any notice to the parties to remove what he considered to be a nuisance. To uphold this procedure could very easily result in serious trouble in the future, in this state. Defendant had the right to present this matter to the public officers whose duty it is to enforce the law. He also had the right to enter the courts in a civil case and ask for redress and relief. There is very grave doubt in our mind that a court of equity would have granted him injunctive relief under the facts as here presented. If this be true, how much less would be the reason for granting relief from a direct violation of the city ordinance in a criminal case.

We are of the opinion that the judgment and sentence of the municipal criminal court of the city of Tulsa should be affirmed; and it is so ordered.

JONES, J., concurs. DOYLE, J., not participating.