_____

No. 95-2571
_____

United States of America,      *
                               *
            Appellee,          *
                               *  Appeal from the United States
      v.                       *  District Court for the
                               *  District of South Dakota.
Patrick L. Heathershaw,        *
                               *
            Appellant.         *

_____

Submitted:  December 12, 1995

Filed:  April 17, 1996
_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Patrick Heathershaw appeals his conviction of theft of government property in excess of $100 value, 18 U.S.C. § 641 (1994).  Heathershaw was convicted of stealing posts and barbed wire from a fence belonging to the Air Force and using the materials to build a fence on land he leased. Heathershaw claims that the Air Force built its fence on land he leased, that the Air Force fence was a hazard to his livestock, and that he had a right to move it to make it safe.  At trial, the district court excluded evidence that the fence was on Heathershaw's leasehold, instructed the jury that ownership of the land was irrelevant to Heathershaw's intent to steal, and refused Heathershaw's requested claim-of-right instruction.  We reverse.


     Heathershaw is a rancher in the Badlands of South Dakota,

whose ranch abuts an old Air Force bombing range.[1]  He is an enrolled member of the Oglala Sioux Tribe.  His ranch is on the Pine Ridge Indian Reservation, and he leases the land from the Bureau of Indian Affairs and the Oglala Sioux Tribe.  The bombing range is no longer in use, but it contains unexploded ordnance, and so the Air Force has posted warning signs to keep the public off the land.  In 1992, the Air Force built a fence around the perimeter of the bombing range.  In 1993, the Air Force received an anonymous tip that someone was stealing the fence.  Investigators followed up on the tip and found that there were many places where the fence was missing.  While the investigators were inspecting the fence on June 29, 1993, they encountered Heathershaw, who was building a new fence in the area.[2]

The investigators asked Heathershaw if he knew anything about the fence and he replied that he was part of their fence problem.  Heathershaw told the inspectors about problems the Air Force fence was causing him. He admitted he had used metal poles from the Air Force fence to build his fence and that he had about twenty wooden posts from the Air Force fence in his pickup truck.  He denied taking any barbed wire, but the investigators noticed that wire they had seen at the site recently was no longer there.  Heathershaw later told an FBI agent that he had used two strands of Air Force barbed wire in building one-half mile of fence.

Heathershaw told the agent that he had lost four calves

_____

[1]In fact, the land condemned for the bombing range was originally part of Heathershaw's ranch.

[2]All our references to the location of the new fence and the old fence must be extremely general because of a defect in the record.  The government and Heathershaw made almost continuous use of a map at trial and most of the testimony refers to colored lines and marks on this map.  However, no one introduced the map into evidence.  Heathershaw has appended a black and white copy of the map onto his brief, but the copy does not show the colored lines and is of such poor quality that it is useless to this court.

because they had wandered onto the bombing range through gaps in the Air Force fence and had been unable to rejoin their mothers. He also said that he had lost one of his horses, which became tangled in loose wire from the government fence and had to be killed.

The government indicted Heathershaw under 18 U.S.C. § 641, which provides that "[w]hoever embezzles, steals, purloins, or knowingly converts to his use . . . any record, voucher, money, or thing of value of the United States . . . Shall be fined under this title or imprisoned not more than ten years, or both . . . ."

Heathershaw's defense at trial was that the Air Force fence had been allowed to fall into disrepair, and that much of it had been knocked down by hunters trying to gain entrance to the bombing range and by natural forces. He said that the hunters cut the fence and that loose wire and posts were strewn on the ground. According to Heathershaw, the poor condition of the fence rendered it a hazard to Heathershaw's livestock. Heathershaw testified that he had picked up posts and wire off the ground and used them in building the new fence.

Heathershaw attempted to develop a related defense that the Air Force erroneously located part of the fence on land Heathershaw leased from the BIA, and that he had simply relocated the fence on his leased property. Heathershaw called as a witness a BIA official who administers the land Heathershaw leases. He offered to prove that the official found "leasehold interests in Mr. Patrick Heathershaw within the retained area." The court excluded the evidence, saying that even if the fence was on Heathershaw's leasehold, it was not relevant to his intent to steal.

The court also denied Heathershaw's request for a claim-of-right instruction that if Heathershaw had a right to dispose of the fence as he did, he lacked intent to steal. The court rejected the

instruction, stating, "The Court rules as a matter of law that the defendant did not have a right to dispose of the property as he did."

During deliberations, the jury asked a question about the ownership of the land:  "Is BIA land Government land if so the fence was not stolen from the United States Government.  it was just moved? [sic]."  The court responded: "You are instructed that the ownership of the land to which the fence may have been moved is immaterial on whether or not the government has proved beyond a reasonable doubt the elements set forth [in the instruction stating the elements of section 641]."  The jury sent back another note to the court:  "We agree to the testimony of Mr. Heathershaw that he said yes re stealing the poles from the gov't.  There are some jurors that believe that he did not intend to deprive the owner of the use and benefit of the thing of value or property so taken.  We are having a hard time dirtiming [sic] what Mr. Heathershaw's intent was when he stole the poles."  The court responded in part:  "The intent which is required to constitute a violation of the law charged is the intent to take property to a use inconsistent with the government's rights and benefits.  The government has the right to determine the use to which it puts its property."

The jury then returned a verdict of guilty.

On appeal Heathershaw argues that the court erred in excluding his evidence that the Air Force fence was on his leasehold and that the court directed a verdict on the element of intent by its responses to the jury's notes.  He also claims that the court erred in denying his requested claim-of-right instruction.

We must first decide whether the court erred in excluding

evidence that the fence was on Heathershaw's leasehold.[3]  We review the district court's evidentiary rulings for abuse of discretion.  See United States v. Coney, 51 F.3d 164, 165 (8th Cir. 1995).

Heathershaw contends that evidence the Air Force fence was on his leasehold is relevant to his claim of right.  Heathershaw cites Morissette v. United States, 342 U.S. 246 (1952), arguing that facts showing he had a claim of right negate the element of intent to steal.  In Morissette, the defendant took shell casings from a government bombing range and sold them.  He was prosecuted under section 641.  Morissette claimed he believed the casings were abandoned property.  The district court instructed that if Morissette took the casings off government property without permission, he was guilty, and that his claim of abandonment was no defense.  Id. at 249.  The Supreme Court reversed, holding that criminal intent is an element of section 641, id. at 273, and that Morissette had the right to a jury determination of whether he acted with wrongful intent or in the belief that the property was abandoned.  Id. at 276.

The district court stated in excluding Heathershaw's evidence about ownership of the property:

> Let's assume without necessarily conceding that [Heathershaw leased] that whole bombing area, what right does he have, then, to remove the fence put there by the owner of the land?  What right do you have to remove that fence and take the fence for his own purposes?  Now, there's such things as self-abatement of a nuisance under South Dakota law, but that doesn't give you a right to

---

[3]Heathershaw's brief raises this evidentiary question only as a part of his objection to the instructions, not as a separate issue; however, we believe the issue is fairly preserved by his argument:  "The court's ruling to exclude the evidence and testimony regarding Heathershaw's leasehold interest in areas of the TIA [Target Impact Area] fenced-in parcels, unfairly denied Heathershaw the opportunity to present his defense of claim of right to do what he did . . . ."

steal the property, take the property for your own use and benefit.

The district court thus acknowledged the existence of a right of self-help to abate a nuisance. Under South Dakota law, the right is codified:

> Any private person may . . . abate . . . any private nuisance injurious to him in any manner by removing, or, if necessary, destroying that which constitutes the nuisance, without committing a breach of the peace or doing unnecessary injury. If a private nuisance results from a mere omission of the wrongdoer, and cannot be abated without entering upon his land, reasonable notice shall be given to him before entering to abate it.

S.D. Codified Laws Ann. § 21-10-6 (Supp. 1995).

Under this statute it was relevant to Heathershaw's claim of right whether the land on which the fence was situated was his land or the Air Force's land, because if it was his, he could resort to self-help without first giving notice. Further, if the fence was on Heathershaw's land, it would be impossible for Heathershaw to avoid the nuisance without curtailing his rightful use of his leasehold; this would certainly bear on whether the fence was "injurious" to Heathershaw.

According to Heathershaw's testimony, it was not only necessary to get the old fence out of the way, but also to close off his cattle from the danger posed by gaps in the government fence. Heathershaw testified that the Air Force fence was down in many places and the posts "were scattered in so many directions that I just went around and picked them up so the cattle wouldn't get caught in them anymore." Heathershaw also testified that his purpose in building the new fence was to protect his livestock from the hazard created by the Air Force:

> My purpose in building that fence was that the government created traps that my cattle and horses were caught in every day. I had to construct that fence so that my cattle and horses weren't caught in a terrible, terrible trap without water.

Thus, according to Heathershaw, he used the government property only to abate the nuisance created by the Air Force. On this record, whether Heathershaw acted to abate the nuisance or to steal the materials was an issue of intent for the jury. Therefore, the court erred in concluding that as a matter of law Heathershaw's claim of right under South Dakota law was not relevant to the issue of criminal intent.[4]

---

[4]Our research has unearthed several state cases in which a defendant's claim of right based on abatement of a nuisance was offered as a defense to criminal charges. In Holleman v. City of Tulsa, 155 P.2d 254 (Okla. Crim. App. 1945), a defendant was charged with malicious mischief because he walked up to his neighbor's house and tore up a sign which he alleged to be a nuisance. His defense was that he was abating a nuisance, under a statute similar to the South Dakota nuisance statute. The court rejected his claim-of-right defense because there was no evidence he gave any notice before entering on the neighbor's property. In Moran v. State, 316 P.2d 876 (Okla. Crim. App. 1957), a defendant successfully interposed a claim-of-right defense to malicious mischief charges where he removed a fence his neighbor placed on the defendant's property. The Oklahoma Court of Criminal Appeals overruled Moran in McDaris v. State, 505 P.2d 502 (Okla. Crim. App. 1973). It is unclear whether McDaris meant to do away with the requirement of specific intent to harm the property owner in malicious mischief cases or to do away with the claim-of-right defense. If it is the former, McDaris has no bearing on this case, because the specific intent for malicious mischief is irrelevant to section 641 theft. If it is the latter, McDaris would be contrary to Morisette v. United States, 342 U.S. 246 (1952), which permits a claim-of-right defense to section 641 theft.

Finally, in State v. Moore, 255 S.E.2d 709 (Ga. 1979), a defendant was convicted of criminal trespass for driving his truck through a gate that he claimed wrongfully closed off his right-of-way. The Georgia Supreme Court held that the Georgia statute authorizing use of force to defend one's property only authorized use of force against other people and not against their property. This statute is entirely different from the South Dakota nuisance statute, and so Moore is not pertinent.

Consequently, the court's exclusion of the evidence of ownership was based on an erroneous conclusion about the validity of Heathershaw's defense, and was, therefore, an abuse of discretion.  The ruling prevented Heathershaw from presenting his theory of defense and so was harmful to his case.

By the same token, it was error for the court to instruct the jury that ownership of the land was immaterial.  "An instruction that decides a material issue of fact as a matter of law is regarded as a partial instructed verdict of guilt and is prohibited."  United States v. Dakota Cheese, Inc., 906 F.2d 335, 338 (8th Cir. 1990) (citations omitted), cert. denied, 498 U.S. 1083 (1991).

A defendant's belief that facts exist which would give him the right to dispose of the property negates intent to steal under section 641.  See Morissette, 342 U.S. at 275-76.  Therefore, by instructing the jury that it could not consider ownership of the land, which was relevant to Heathershaw's claim of right, the court wrongfully denied Heathershaw the chance to have the jury decide his guilt.  See Morissette, 342 U.S. at 274 ("When intent is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury.").

On the same reasoning, it was error to deny Heathershaw's claim-of-right instruction.  A defendant is entitled to an instruction on any recognized defense on which there is sufficient evidence for a jury to find in his favor.  United States v. Brown, 33 F.3d 1002, 1004 (8th Cir. 1994).

Since we must reverse on the grounds discussed above, we need not consider Heathershaw's additional claims of trial error.

A true copy.

Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.