GOODWIN v. BLAKE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:GOODWIN v. BLAKE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 GOODWIN v. BLAKE
2018 OK CIV APP 20
413 P.3d 894
Case Number: 114884
Decided: 10/30/2017
Mandate Issued: 03/21/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 20, 413 P.3d 894

 

CECILIA W. GOODWIN, et al., Plaintiffs/Appellees,
v.
PATRICK H. BLAKE and JOAN E. BLAKE, Defendants/Appellants.



APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE BARBARA SWINTON, TRIAL JUDGE



AFFIRMED



John W. Gile, Matthew R. Gile, HALL, ESTILL, HARDWICK, PC, GABLE, GOLDEN & NELSON, Oklahoma City, Oklahoma, for Plaintiffs/Appellees



W. Dan Nelson, Oklahoma City, Oklahoma and
MaryGaye LeBoeuf, Oklahoma City, Oklahoma, for Defendants/Appellants




P. THOMAS THORNBRUGH, VICE-CHIEF JUDGE:


¶1 Patrick H. Blake and Joan E. Blake (the Blakes) appeal a decision of the district court holding that they acted unreasonably in destroying some 940 feet of fence belonging to Cecilia Goodwin and others, and awarding damages. On review, we affirm the decision of the district court.

BACKGROUND

¶2 This case begins in November 2005, when Cecelia Goodwin filed a petition to quiet title and an application for injunction, alleging that she owned certain property in the N/2 of the SE/4 of Section 34, Township 14, Oklahoma County, and that her adjoining neighbors, the Blakes, had entered a strip at one edge of the property and destroyed her fence. The fence was allegedly located on a section line. The same month, the Blakes filed suit alleging that the Goodwin family (the Goodwins) had refused them rightful access to the same strip of property. The record shows that the Blakes were attempting to establish an access road to their property along the section line without a prior judicial declaration of their right to do so. The two cases were consolidated.

¶3 On September 19, 2011, the district court held a bench trial and issued a journal entry holding that the Blakes had no authority to open the section line, and, as a result, had no right to remove the Goodwins' fence. We vacated this decision in June 2014 in Case No. 111,172, because neither the common law of easements nor 69 O.S.2011 § 1201(A) require that a landowner seeking to use a section line for access to their own property "open" the section line to do so. We remanded the matter to the district court to inquire into the reasonableness of the Blakes' actions in attempting to create access along the section line, and to decide whether the Blakes had a right to destroy the Goodwins' fence based upon a grant of "reasonable access and use" of the section line. The district court held trial on this question in 2015, and allowed the Blakes' road to stay, but awarded damages for the destruction of the Goodwins' fence. The Blakes now appeal for a second time.

STANDARD OF REVIEW

¶4 "The denial or award of an easement is an exercise of the trial court's equitable cognizance, and its order will be affirmed on appeal unless it is found to be against the clear weight of the evidence or contrary to law or established principles of equity." Mainka v. Mitchusson, 2006 OK CIV APP 51, ¶ 11, 135 P.3d 842; see also Barrett v. Humphrey, 2012 OK CIV APP 28, 275 P.3d 959. This case also requires the interpretation of 69 O.S.2011 § 1201(A). Legal questions involving statutory interpretation are subject to de novo review. Heffron v. Dist. Court of Okla. Cnty., 2003 OK 75, ¶ 15, 77 P.3d 1069. De novo review is non-deferential, plenary and independent. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

ANALYSIS

¶5 Preliminarily, we must correct certain statements made in the Blakes' petition/briefing regarding the earlier appeal: the Blakes state that "On appeal, COCA vacated the judgment holding that Goodwins had no right to erect a fence . . . ." The Blakes' reply brief goes further, stating that we "held in the first appeal that Blake had had an inviolable constitutional right" to use the section line for access. This Court made no such statements in its prior opinion. Nor do we believe that our decision could be reasonably (mis)interpreted as making such statements. Our prior Opinion clearly stated:

Given that the right to use the section line for access is clearly conditioned on equitable principles, we find that the district court was required to inquire into the reasonableness of the Blakes' actions in attempting to create access along the section line, and decide whether the Blakes had any right to remove the Goodwins' fence based upon a grant of "reasonable access and use." (Emphasis added).

¶6 Consistent with that prior order quoted above, two issues were therefore presented for decision by the district court: (1) did the Blakes demonstrate that their use of the section line for access was reasonable pursuant to the criteria set out by Burkhart v. Jacob, 1999 OK 11, 976 P.2d 1046,[1] and similar cases; and (2) if so, did the Blakes have a right to destroy some 940 feet of the Goodwins' fence as part of this "reasonable access?"

I. The Need For Access

¶7 The district court's order appears to find that the Blakes did demonstrate the necessity to make reasonable use of the section line in order to access their property. The need for such access does not have to be absolute, i.e., the proposed road need not be the only possible means of accessing adjoining land. Burkhart at ¶ 15. Here, although the Blakes had an alternate route of access, that route was also subject to dispute with another neighbor. The court observed after closing argument that "the roadway is there," and there would be little point in closing it only to leave the Blakes' property without effective access and thereby begin another easement argument. Pursuant to the standard of review, we find no error in the decision that the Blakes met the requirements to demonstrate their entitlement to an easement by necessity, and the road already constructed on the section line provided this access.

¶8 The argument of consequence in this case concerns whether the Blakes should pay compensation for destroying the Goodwins' fence while constructing their road. The Blakes contend they had a right to remove "obstructions or nuisances" from an "easement," and that the Goodwins' fence constituted such an obstruction because it veered onto the section line easement at a certain point.[2]

II. Use of the Section Line

¶9 The core of the Blakes' argument is that they had an immediate right to begin constructing an access road down the unopened section line because they already possessed an easement across the Goodwins' property running along the section line at the time they began to construct the road, which gave them the right to construct the road and "remove obstructions" from their "easement." We find no record of such an easement. The Blakes argue that their alleged easement was created by the Legislature in the 1975 amendments to § 1201(A). We find nothing in the language of the statute itself, or in the case law before or since 1975, declaring an absolute, or automatic, right of a landowner to place an access road across a neighbor's property, regardless of whether the road is to be located on a section line. In fact, although the original 1909 statutory language that "all section lines in the State are hereby declared public highways" could be interpreted as creating a public highway on all section lines (and hence a general right of access), case law has persistently described the statute as having created only an easement along section lines for the benefit of the state. See, e.g., Franks v. Tyler, 1974 OK CIV APP 55, ¶ 3, 531 P.2d 1067 (citing Salyer v. Jackson, 1924 OK 1173, 232 P. 412)(Franks overruled on other grounds in Childress v. Jordan, 1980 OK CIV APP 35, 620 P.2d 470). Nonetheless, the Blakes rely on an interpretation of Burkhart v. Jacob to reach an opposite conclusion.

A. Burkhart Distinguished

¶10 The question in Burkhart was whether the Burkharts could substantially change the use of an existing easement without the permission of the Jacobs, the servient estate owners. The common law in prior cases such as Hudson v. Lee, 1964 OK 134, ¶ 13, 393 P.2d 515, protected a servient estate from the use of an easement that went beyond the intent or reasonable expectations of the parties at the time of its creation. The Burkharts argued that the 1975 amendment to § 1201(A), which provides that "No fee owner shall be denied the right of ingress and egress to his land by virtue of this Act," had overruled this common law and prohibited the courts from restricting new or different uses of an appurtenant easement.

¶11 Burkhart held that the revised § 1201(A) did not overrule this common law of "reasonably contemplated use." As a part of that analysis, ¶ 10 of Burkhart stated that "By the use of the term 'ingress and egress' [in § 1201(A)] the Legislature has created an easement in general terms without specifics." The Blakes rely upon this paragraph for their argument that the 1975 amendment to § 1201(A) created new "general easement" rights along section lines.

¶12 The paragraph must be read in the context of the rest of the case, however. The Burkharts already had an appurtenant easement, and the Burkhart court was referring only to the fact that an existing "ingress and egress" right was a "general" easement, and hence was subject to the common law "reasonable use" restrictions. We reject the argument that Burkhart changed the state's highway easements to "general easements" over thousands of miles of section lines, and thereby substantially changed the statutory and common law scheme in effect till that time.[3]

B. Other Case Law

¶13 We find it clear that Burkhart did not recognize a new general right to an easement along a section line. We further find no other evidence that such a right was created in 1975 or existed prior to that time. Title 69 O.S.2011 § 1201(A) was derived from the previous 69 O.S.1961 § 1, which had existed in some form since 1909. Prior to 1968, the rule regarding section lines was found at 69 O.S.1961 § 1. It had not changed substantially since 1909. That statute simply stated that "all section lines in the State are hereby declared public highways." The statute was recodified, with essentially the same provisions, in 1968 as 69 O.S. § 1201. It is currently located within the "right of way" provisions of the state's county road improvement statutes. In 1975, the Legislature added additional provisions to § 1201. The 1975 amendment changed the 1968 version of the statute in two ways. First, it changed the declaration that section lines were "declared public highways" to one that "all section lines in the state which are opened and maintained by the board of county commissioners or the Department of Public Highways for public use are hereby declared public highways." Second, it allowed an unopened section line to be designated a "reserved section line" that was "in the full and complete control of the owner or owners of the abutting land." It was at this point that the Legislature also added the caveat that "no fee owner shall be denied the right of ingress and egress to his land by virtue of this act." We find it clear that this caveat was not meant to create any new right, but was simply intended to limit the effect of the 1975 amendments on existing rights. Hence the statute created no new "right of access," but merely confirmed that existing statutory or common law rights were not affected by placing a section line in reserve status, or by virtue of a section line being deemed "unopened."

III. Removal of the Fence

¶14 As discussed above, we find no legal principle that a landowner has an automatic easement to place an access road across a neighbor's property if a section line was used. As an alternative basis for decision, however, the Blakes propose a statutory or common law right of an individual to destroy a neighbor's property on the grounds that it encroaches on a state or county owned easement. We reject this argument. The Blakes cite White v. Dowell, 1915 OK 1090, 153 P. 1140, as supporting this principle, but White makes no mention of any private right to remove obstacles from a state easement. We find no authority that any law reserving section lines for public highway purposes granted any private right of enforcement against obstructions where no county road was present.

¶15 The Blakes further argue that the Goodwins' fence constituted a "private nuisance" that they had a right to remove. The Blakes trace this right from 50 O.S.2011 § 1 (blocking a "highway" is a nuisance) in combination with 50 O.S.2011 § 13 ("the remedies against a private nuisance are: 1. A civil action; or, 2. Abatement."). Section 14 of the same statute states that "A person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which constitutes the nuisance, without committing a breach of the peace or doing unnecessary injury." Case law on this provision is very limited.[4] The only major cases dealing with this remedy of self-abatement of a nuisance are Hummel v. State, 1940 OK CR 27, 99 P.2d 913 and Holleman v. City of Tulsa, 1945 OK CR 7, 155 P.2d 254.

¶16 Hummel involved neighbors allegedly seizing a roaming red bull of dubious pedigree that was attempting to mate with the defendant's "nice, fine herd of white-faced cattle." Id. When the bull was returned, it had, in the interim, become a steer. This action fell under a direct and specific statute, Section 9044, Okla. Stats. 1931, which made it an offence for:


. . . any owner of livestock in this state, to permit any male swine over the age of four (4) months, or any bull over the age of nine (9) months to run at large within any portion of this state where cattle and swine are permitted by law to run at large, unless the animals or animal be pure or standard bred.

¶17 The Hummel Court found that the owner was unwilling to confine the non- pure bred bull, and that its free-roaming procreation would damage the bloodline of the neighbors' stock. The bull was therefore a private nuisance, and returning it sans testicles was a reasonable form of abatement.

¶18 Five years later, however, Holleman distinguished Hummel and limited this common law doctrine noting that:

The right of an individual to abate a nuisance is recognized, but a careful reading of the entire text reveals that distinctions are made even by a court of equity, and that such courts will take into consideration the nature of the nuisance to be abated, its direct or harmful results to the party, and whether the nuisance may be abated without a trespass upon the land or premises of another.

This distinction was clearly drawn in the case of Hummel v. State, supra. There an injury was being inflicted that was irreparable, and demanded immediate action, and did not necessitate the entering upon the premises of another. It was recognized as a damage to the property, as distinguished from a damage to the person.

¶19 Even assuming, without agreeing, that the Goodwins' fence could qualify as a "private nuisance," Holleman is quite clear that "self-help" in the form of abatement is allowed only when the injury being inflicted is an irreparable damage demanding immediate action. We find no facts indicating that the Blakes faced such an immediate and irreparable harm to their property or rights that the normal and accepted procedure of a judicial determination of rights or injunctive relief could not be followed. The trial court's judgment on this issue is supported by the evidence, and will not be overturned.


IV. The Fee Issue

¶20 One final issue is presented. In their petition in error, the Blakes attempt to raise the issue of "whether Goodwin is entitled to recover attorney fees for Blake's removal of a fence . . . ." However, the docket sheet and record are clear that the district court had made no fee award at the time this petition was filed on March 8, 2016. The district did not enter a journal entry on fees until a year later, on March 8, 2017. The record was completed on October 28, 2016, before this journal entry was made. We find no record that the Blakes either attempted to amend their petition to add the fee issue, or to amend the record to include this later journal entry. Nor do we find any substantive argument in the briefs regarding the fee issue. Therefore, we regard it as not having been properly raised in the appeal and decline to address it.

CONCLUSION

¶21 We reject the Blakes' contention that the 1975 amendment to 69 O.S. § 1201 created an automatic right for any private landowner to use a section line to construct an access road on a neighbor's property without first seeking an easement. Though the district court eventually recognized that the Blakes had a right to an easement by necessity along the section line, we find no resulting legal right or privilege for the Blakes to destroy the Goodwins' fence. Accordingly, we affirm the judgment of the district court.

¶22 AFFIRMED.


BARNES, P.J., and WISEMAN, J., concur.



FOOTNOTES


[1] We will discuss other implications of the Burkhart case later in this opinion.



[2] There were various disputed surveys regarding the position of the easement relative to the fence.



[3] If Burkhart did so, this would constitute one of the most far-reaching and radical changes in property law since statehood.



[4] We would live in little more than a state of anarchy if the combination of 50 O.S. 2011 § 1 and § 14 grants every citizen license to destroy another's property if that citizen believes that the property "endangers the comfort, repose, health, or safety of others," or "offends decency," or "in any way renders other persons insecure in life" without any judicial inquiry as to whether the property does, in fact, constitute a "nuisance."









 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1940 OK CR 27, 99 P.2d 913, 69 Okl.Cr. 38, Hummel v State
Discussed
 1945 OK CR 7, 155 P.2d 254, 79 Okl.Cr. 387, Holleman v Tulsa
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 51, 135 P.3d 842, MAINKA v. MITCHUSSON
Discussed
 2012 OK CIV APP 28, 275 P.3d 959, BARRETT v. HUMPHREY
Discussed
 1974 OK CIV APP 55, 531 P.2d 1067, FRANKS v. TYLER
Discussed
 1980 OK CIV APP 35, 620 P.2d 470, Childress v. Jordan
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1915 OK 1090, 153 P. 1140, 49 Okla. 589, WHITE v. DOWELL
Discussed
 1964 OK 134, 393 P.2d 515, HUDSON v. LEE
Discussed
 2003 OK 75, 77 P.3d 1069, HEFFRON v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 1924 OK 1173, 232 P. 412, 105 Okla. 212, SALYER v. JACKSON
Discussed
 1999 OK 11, 976 P.2d 1046, 70 OBJ 647, Burkhart v. Jacob
Discussed
Title 50. Nuisances
 Cite
Name
Level

 50 O.S. 1, Nuisance Defined
Cited
 50 O.S. 13, Two Remedies Against a Private Nuisance
Cited
Title 69. Roads, Bridges, and Ferries
 Cite
Name
Level

 69 O.S. 1201, Open Section Lines as Public Highways - Reserved Section Lines
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA